JAMES CLARK *v.* STATE OF INDIANA.

[No. 777S537. Filed September 29, 1978.]

*Richard M. Salb,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Michael Gene Worden,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted in a trial by jury of Felony Murder, Ind. Code § 35-13-4-1 (Burns 1975), Inflicting Injury in the Attempted Commission of a Robbery, Ind. Code § 35-13-4-6 (Burns 1975) and Second Degree Murder, Ind. Code § 35-1-54-1 (Burns 1975). He was sentenced to imprisonment for life upon the felony murder conviction. His direct appeal presents the following issues:

(1) Whether or not the trial court erred in allowing x-ray pictures of the defendant into evidence over his objection that they were the result of an illegal search and seizure.

(2) Whether the trial court erred in admitting identification testimony over Defendant's claim that it was the result of an unnecessarily suggestive and impermissible out of court identification.

(3) Whether or not the trial court erred in denying a defense motion for mistrial premised upon alleged prosecutorial misconduct in final argument.

## ISSUE I

Defendant has vacillated considerably among various bases in support of his contention that the procurement of evidence, by x-ray photographs of his body, was an unlawful search. The grounds for objection to the admission of evidence urged on appeal must be the same as those made in trial, *Beasley* v. *State,* (1977) 267 Ind. 396, 370 N.E.2d 360; and errors not presented by the motion to correct errors are not assignable on appeal. *Finch* v. *State,* (1975) 264 Ind. 48, 338 N.E.2d 629.

By giving a liberal interpretation to the defendant's motion to correct errors and to his brief on appeal, with a view toward considering appeals upon their merits, we conclude that two overlapping arguments upon this issue are entitled to review, i.e. that the judge who issued the warrant authorizing the x-ray search had no jurisdiction to do so; because (1) he was not neutral and detached, and (2) because he

had previously been removed as presiding judge in the cause, by the defendant's motion for a change of judge.

In support of his contention that the judge who issued the search warrant did not qualify as a neutral and detached magistrate, the defendant cites *Coolidge* v. *New Hampshire,* (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. In *Coolidge,* the United State Supreme Court was presented with a warrant issued by the "chief government enforcement agent of the State—the Attorney General—who was actively in charge of the investigation and later was to be chief prosecutor at the trial." The court found that such an enforcement agent could not be asked to maintain the requisite neutrality with regard to their own investigations.

The case at bar differs from *Coolidge,* however, in that the warrant being questioned was not issued by a state enforcement agent but by a judge qualified under the statute. Ind Code § 35-1-6-1 (Burns 1975). The only argument that the defendant makes concerning the issuing judge's lack of neutrality is that he had previously been the presiding judge but had been removed by virtue of a defense motion for a change of judge. It is contended that under such circumstances, it should be presumed that the judge was not neutral and detached. However, the judge had been removed from the case by the exercise of the defendant of his right to an automatic (without cause) change of judge. He had not been removed by reason of bias or prejudice, proven or alleged. Without a showing to the contrary, we presume that the judge had sufficient neutrality and detachment to make a probable cause determination and issue a warrant, notwithstanding that he had been previously removed as presiding judge.

Defendant has cited *Lucas* v. *State,* (1968) 249 Ind. 637, 233 N.E.2d 770 in support of his position that upon the filing of the motion for a change of judge, the presiding judge lost jurisdiction to do anything in the cause, other than to rule upon the motion. Upon

the surface, such position appears to have merit, but the reason and logic of the rule from *Lucas* is not applicable in the case before us. The determination of probable cause and consequent issuance of a warrant does not bear upon the issues of the case to the extent that the fair trial rights of a party could be thereby prejudiced. The legality of the search was, nevertheless, subject to the determination by the special judge who presided at the trial and was, in fact, considered and determined by him.

The authority for issuing search warrants is set by statute, Ind. Code § 35-1-6-1 (Burns 1975), which in no way suggests that it is dependent upon jurisdiction of the case in which the evidence sought will be pertinent. In fact, in most instances, there is no case pending at the time such warrants are issued. We do not believe that the potential for harm from the submission of a probable cause determination to a judge or magistrate qualified by statute is sufficient to warrant the invocation of a rule of limitation more restrictive than the authorizing statute.

Notwithstanding our holding upon this issue, we view the actions of the issuing judge in entertaining the probable cause proceedings as a judicial indiscretion, as having a potential for the appearance of both bias activity and intermeddling in the affairs of another judge. Our ruling herein would almost certainly be otherwise, if any shadow had been cast upon the existence of probable cause.

An issue touched upon in the defendant's brief but not properly before us is a challenge to the legality of the x-ray search, as an unwarranted physical intrusion under *Adams* v. *State,* (1973) 260 Ind. 663, 299 N.E.2d 834. However, the admission of the evidence was not challenged upon this ground, either at the trial or in the motion to correct errors. *Beasley* v. *State, supra; Finch* v. *State, supra.* We note that such examinations have been upheld in other jurisdictions under the authority of a search warrant. *United States* v. *Allen,* (E.D. Penn. 1972), 337 F.Supp. 1041; *Weeks* v. *State,* (1977)

Ala., 342 So.2d 1335; *State* v. *Anonymous*, (1976) 32 Conn. Supp. 306, 353 A.2d 789.

## ISSUE II

During the course of the State's case in chief, Shirley Ann Brown was called to testify, at which point the defendant moved to suppress any of her testimony relating to an identification of the defendant. A hearing was held, the motion was denied, and Mrs. Brown was allowed to identify the defendant.

The evidence presented at the suppression hearing disclosed that on June 8, 1976, at approximately 10:45 p.m. Mrs. Brown saw two men run from the front porch of the home of her neighbors, the Rhodarmels. Both the front porch light and the yard light were on at the Rhodarmel home, as was Mrs. Brown's porch light. Mrs. Brown testified that there was sufficient light and that she could clearly see the second of the two men, as he ran directly toward her porch, where she was standing. He continued running past her and across her yard. Shortly thereafter, Mrs. Brown went next door to discover that Mr. and Mrs. Rhodarmel had been shot. She was taken to the police station, where she gave the police a description of the man she had seen running across her yard. She gave a description that roughly fit that of the defendant and said that he was wearing a white shirt. On the back of the shirt was a spot, which could have been a blood stain, about four inches in diameter.

After giving her statement, Mrs. Brown went to the hospital, at the request of the police, to view a gunshot victim. No further information was given to her. Upon arriving at the hospital, Mrs. Brown viewed the defendant as he was lying on a bed, covered from the waist down with a sheet. She immediately told the police that she knew that he was the man, but that she did not know if she could go to court and say so. She then looked at the defendant a second and third time, and each time she repeated to the police that she knew

he was the person she had seen earlier that evening running from the Rhodarmel house. On June 10, Mrs. Brown telephoned the police to make certain that they understood that she had made a positive identification on the defendant. When asked at the hearing to explain her statement made to the police indicating an inability to go into court and identity the defendant, Mrs. Brown testified that the statement had been made in reference only to her emotional state and not with reference to any uncertainty in her identification.

On appeal, the defendant argues that the use of a one-man show-up in the instant case was inherently suggestive and that therefore the witness should not have been allowed to testify either as to the out of court identification or to identify him in court. Although, as the defendant contends, the one-man show-up is generally held to be impermissibly suggestive, *Stovall* v. *Denno*, (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; *Swope* v. *State*, (1975) 263 Ind. 148, 325 N.E.2d 193, this Court has also held that such show-ups are not necessarily to be condemned. *Zion* v. *State*, (1977) 266 Ind. 563, 365 N.E.2d 766; *Dewey* v. *State*, (1976) 264 Ind. 403, 345 N.E.2d 842. Depending upon the surrounding circumstances, it may be found that the show-up was not unnecessarily suggestive, and that there had been no denial of the defendant's due process rights. *Neil* v. *Biggers*, (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Stovall* v. *Denno, supra.*

In the instance case, the show-up took place within hours of the crime. Since the suspect was then a patient due to a gunshot wound which he had received, the witness was taken to the hospital where she positively identified him. At no time did she waver in her certainty that he was the man she had seen earlier in the evening. The suspect's hospitalization made it impractical to consider the use of a lineup. It was in the best interest both of the State and of the defendant to have the witness either identify the defendant or remove the suspicion from his as soon as possible,

so as to allow the police to continue their investigation without further delay. Evidence presented at the hearing indicated that the police refrained from any suggestive comments or actions throughout the entire procedure. Although the show-up itself was not entirely free of suggestiveness, under the exigent circumstances of this case, it was not impermissibly so and did not warrant the exclusion of the evidence at trial.

Additionally, evidence was introduced disclosing that the witness had a basis for her in-court identification that was independent and free of the taint, if any, of the show-up episode. *Swope* v. *State, supra; Cooper* v. *State,* (1977) 265 Ind. 700, 359 N.E.2d 532; *Carmon* v. *State,* (1976) 265 Ind. 1, 349 N.E.2d 167.

## ISSUE III

In the State's final summation, the following remarks were made to the jury:

> "Why did Clark say he was alone, that is the sixth question. And the seventh question is why did he say he drove home when in fact he didn't. And the last question is, if what he said was true at one point in his story, and he did have help and someone brought him home, why weren't they here to tell about it.

> "Mr. Kammen: Objection, Your Honor, the defendant is under no obligation to present any evidence, it is absolutely . . .

> "The Court: The objection will be sustained, . . .

> "Mr. Kammen: . . . improper argument and we asked the jury . . .

> "The Court: . . . and the jury will be admonished to disregard the last comment of counsel.

> \* \* \*

> "The Court: Ladies and gentlemen of the jury, you have been admonished to disregard the last comment of counsel and not to consider it in any way in arriving at any verdict in this cause."

On appeal, the defendant argues that the above remarks made by the State were an improper reference to the defend-

ant's failure to testify, and as such, constituted reversible error. It is questionable as to whether or not the State's remarks were in fact a comment on the defendant's failure to testify. Regardless, any error which may have been committed was cured by the trial court's prompt admonishment to the jury to disregard the State's comments. *Moore* v. *State,* (1977) 267 Ind. 270, 369 N.E.2d 628; *Rowley* v. *State,* (1972) 259 Ind. 209, 285 N.E.2d 646.

The defendant further charges that the court committed reversible error in refusing to declare a mistrial because the prosecutor repeated a statement during his summation to which an objection had been previously made and sustained. No admonishment had been requested, and the comment was relatively innocuous. The defendant has presented no argument upon this issue and has failed to show how he was likely to have been prejudiced by the remarks. Error, if any, in the court's refusal of the mistrial order has, therefore, been waived. Ind. R. Ap. P. 8.3(A) (7).

We find no reversible error. The judgment of the trial court is affirmed.

Givan, C.J. and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 380 N.E.2d 550.