**Steve L. LLOYD, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1281S338.**

Supreme Court of Indiana.

May 17, 1983.

Rehearing Denied July 15, 1983.

John W. Mead, Salem, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Defendant-appellant, Steve L. Lloyd, was found guilty of murder, Ind.Code § 35–42–1–1(1) (Burns 1979 Repl.), by a jury and was sentenced to a forty-year term of imprisonment. In this direct appeal, he presents these issues for review:

(1) Whether he was denied his right to a speedy trial pursuant to Ind.R.Crim.P. 4(B).

(2) Whether the trial court erred by refusing to impose certain sanctions upon the State for its alleged failure to comply with the trial court's discovery order.

(3) Whether the admission of the rifle used in the crime and testimony concerning its recovery denied defendant due process because of a violation of his privilege against self-incrimination.

(4) Whether the defendant was denied his right to trial by a fair and impartial jury because the jury panel was improperly selected.

(5) Whether the rifle used in the crime and the bullet removed from the victim's body were improperly admitted because of a failure to establish an adequate chain of custody.

(6) Whether the trial court erred in admitting photographs of the crime scene.

(7) Whether the trial court erred by refusing to give one of defendant's tendered instructions on the issue of self-defense.

(8) Whether the trial court erred in denying defendant's motion for a directed verdict and whether the jury's verdict was contrary to the law and the evidence.

On June 13, 1980, the defendant shot and killed Terry Hayes in front of several witnesses. The evidence at the trial focused on the events and circumstances surrounding the shooting and defendant's claim that he

acted in self-defense. The facts most favorable to the verdict show that the victim Hayes and his wife Connie went to the home of his sister, Patricia Sue Caves, and his brother-in-law, Gary Douglas Combs, for dinner on this Friday evening. After dinner, Hayes and Combs drove to the residence of Steve and Diane Lloyd to invite them to visit at Caves' home. The Lloyds were not at home, but Hayes and Combs eventually found them visiting other friends and spoke there with defendant.

Hayes and Combs returned to Caves' residence, and a short time later defendant arrived there alone in his car. He entered the house, made an obscene gesture and remark to Combs and motioned for Combs to join him outside. Combs did so and attempted to determine what was causing defendant's hostile behavior, but the defendant remained silent and finally ran away, leaving his car behind. Defendant walked several blocks where he was picked up by his seventeen-year-old brother, Jimmy Lloyd. Accompanying Jimmy were Jimmy's thirteen-year-old friend, LaVonna Napier, and Napier's five-year-old brother, George.

At defendant's direction, Jimmy drove him to the apartment of his brother-in-law, Randy Hinton, where defendant borrowed an Ithaca .22 caliber lever-action single shot rifle and some shells. Jimmy then drove defendant, again at his request, back to Caves' house. As Jimmy's car pulled in the alley adjacent to the home's driveway, Hayes and Combs came out of the house. Defendant got out of the passenger side of the car, laid the rifle over the top of the car and fired one shot, striking Hayes. Hayes fell to his knees, then managed to get inside where an ambulance was called. He was pronounced dead on arrival at the hospital. After taunting Combs to come out of hiding and get the same treatment, defendant fled from the scene. He was arrested at his home early the next morning and later led the police to the location of the rifle used in the shooting.

Defendant and several witnesses called by him at the trial gave a different version of the events leading up to and attending the shooting. They testified about sexual slurs and comments made by Hayes and Combs to Steve and Diane Lloyd and others about Diane Lloyd both on the night of the shooting and during the previous weeks. Defendant testified that his first visit to the Caves' home on the evening of June 13 was to tell Hayes and Combs to stop this harassment and to leave him and his wife alone. He related that an altercation there was provoked by Combs, and when he attempted to retreat, he found that the keys had been removed from his car and he was forced to leave without it. He claimed he borrowed the rifle from Hinton solely for the purpose of scaring Hayes and Combs into letting him retrieve his car.

He testified that upon pulling into the alley on the second visit, Hayes and Combs came running out of the house. Jimmy Lloyd and LaVonna Napier both testified Hayes had something in his hand and that they were frightened for their safety when Hayes began pounding on the car window with his fist and telling them to get out of the car. Defendant got out of the car with the rifle and when Hayes began approaching him around the front end of the car and Combs from the rear, said to Hayes, "Stop, please man, get back," several times. When Hayes continued to advance, defendant shot him once.

## I.

Defendant asserts that he was denied his right to a speedy trial pursuant to Ind.R. Crim.P. 4(B). That rule provides in part:

"If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar."

On July 21, 1980, the trial court granted defendant's "Motion for Discovery and Inspection" and ordered the State to furnish the material requested within thirty days (by August 20). Also on July 21, defendant made a motion for an early trial. The cause had previously been set for trial on September 15, which was within the seventy day period from July 21. On September 9, defendant moved for a continuance of the September 15 trial date, alleging that the State had failed to comply fully with the discovery order. Also on September 9, defendant made another motion for a speedy trial. On October 29, the trial court set the cause for trial on December 8, noting that this was the first available time on the court's calendar. On December 5, defendant filed a motion for sanctions based on his July 21 motion asking that the court dismiss the case against the defendant with prejudice because of the State's failure to afford him a speedy trial. This motion for sanctions was denied on December 8 after argument.

■ ■ Defendant asserts that the denial of his motion to dismiss included within his motion for sanctions was error and he was thus denied his right to a speedy trial. Defendant has not presented for review any issue of a failure to afford him a speedy trial with regard to his speedy trial motion of September 9 since he made no motion for dismissal or discharge based on that September 9 motion. Such a request provides an enforcement mechanism for Criminal Rule 4(B) and defendant's failure to attempt to enforce his request for a speedy trial waives any issue thereon. Failure to make a timely motion for discharge prior to trial constitutes a waiver of that right to discharge. *Mayes v. State,* (1974) 162 Ind. App. 186, 318 N.E.2d 811. Here, defendant never made any such motion with respect to his September 9 early trial motion. Furthermore, defendant never objected to the October 29 setting of the trial beyond the seventy day period from September 9. Defendant's failure to object when the trial date was set beyond the seventy day limit permitted by the rule "must be regarded as acquiescence and a waiver." *Utterback v.*

*State,* (1974) 261 Ind. 685, 686, 310 N.E.2d 552, 553; *see also, Rutledge v. State,* (1981) Ind., 426 N.E.2d 638.

Defendant argues that with respect to his July 21 motion for early trial, the trial court erred in refusing to discharge him because, while he did request a continuance of the original trial date of September 15, that continuance must be charged to the State. He alleges that he had received no discovery from the State prior to his motion for a continuance and contends that the State's failure to make timely discovery as ordered by the trial court forced him to request that continuance so as not to proceed to trial unprepared. However, defendant knew of the State's default in compliance on August 20—only thirty days into the seventy day period triggered by defendant's July 21 motion for an early trial. He took no action to obtain enforcement of the discovery order. He requested no sanctions against the State for failure to comply with the order prior to either the original date set for trial or the expiration of the seventy day period prescribed by the rule. As Judge Miller noted in *Perdue v. State,* (1979) Ind.App., 398 N.E.2d 1290, 1295:

> "[I]f a defendant in a criminal action believes the State has not complied with a discovery order, it is mandatory for him to call this to the attention of the trial court and attempt to compel the State to comply with the order. Otherwise, error resulting from non-compliance is waived. *Dillard v. State* (1971), 257 Ind. 282, 274 N.E.2d 387."

■ ■ Thus, the delay caused by his motion for continuance must be charged to the defendant as due, at least in substantial part, to his inaction in seeking enforcement of the court's discovery order. Defendant was not entitled to discharge for failure to bring him to trial within seventy days of his July 21 motion for an early trial.

## II.

Defendant also argues that he was denied a fair trial because of the State's failure to comply with the trial court's discovery or-

der. In his December 5 motion for sanctions, he requested an order prohibiting the State from introducing into evidence or calling to testify at the trial any evidence or witnesses whose existence, identity or statements were not furnished to him within the time prescribed by the discovery order. He claims the denial of this motion was error.

On September 26, the prosecutor sent a letter to defense counsel indicating that discovery had been completed and listing the items that had been provided to the defendant, including witness's names and statements, police reports and photographs. On December 2, the prosecutor confirmed by letter an earlier telephonic communication informing defense counsel that he was adding four witnesses, of whom defendant was aware, to his witness list and provided a copy of the autopsy report. On the third day of trial, the prosecutor found two witness statements that had been inadvertently misplaced, turned them over to defense counsel and informed him that he planned to call one of those witnesses, Denny Cheatham, during the trial. Defendant requested and was granted an overnight continuance to prepare for Cheatham's testimony.

The court's discovery order of July 21, directing the State to comply within thirty days, was entered when a trial date of September 15 was planned. As explained above, the trial in this case did not commence until December 8. Thus, substantially all discovery was completed over two months prior to trial. The addition of four witnesses to the witness list a week before trial did not cause defense counsel to be "compelled to maneuver in a factual vacuum, "as proscribed in *Johns v. State*, (1968) 251 Ind. 172, 179, 240 N.E.2d 60, 64. Judge Staton observed in *Upshaw v. State*, (1976) 170 Ind.App. 206, 211, 352 N.E.2d 102, 105:

> "[T]he purpose of pretrial discovery is to promote justice and to prevent surprise by allowing the defense adequate time to prepare its case."

Defendant does not contend that he was surprised by these witnesses or that he did not have sufficient time to prepare for their testimony.

■ As for the witness Denny Cheatham, we have often said that unless the State's action in violating the discovery order is in such bad faith or is so misleading that the only way to avoid the denial of a fair trial for the defendant is to exclude the State's evidence, a continuance is the most appropriate remedy. *Chandler v. State,* (1981) Ind., 419 N.E.2d 142; *O'Connor v. State,* (1980) Ind., 399 N.E.2d 364; *Carson v. State,* (1979) Ind., 391 N.E.2d 600. The choice of the remedy lies within the discretion of the trial judge and will not be overturned unless that discretion has been clearly abused. *Reid v. State,* (1978) 267 Ind. 555, 372 N.E.2d 1149; *State v. Buza,* (1975) 163 Ind.App. 514, 324 N.E.2d 824.

Although defendant claimed he was "surprised" by Cheatham's appearance as a witness, the record shows that Cheatham had testified at a July 11, 1980 hearing held on defendant's "Motion to be Let to Bail." He was not present at the shooting and his testimony at the bail hearing and at the trial concerned only the events transpiring before and after the crime. He presented no evidence in derogation of defendant's claim of self-defense. The overnight continuance granted the defendant was an adequate remedy and did not constitute an abuse of discretion.

■ Since defendant was afforded substantial discovery well in advance of trial and was granted an overnight continuance when faced with an additional witness during trial, the trial court committed no error in refusing to assess any other of defendant's requested sanctions against the State.

### III.

Defendant next assigns as error the trial court's denial of his motion to suppress introduction at trial of the rifle used in the shooting and any evidence regarding his act of leading police to the weapon, claiming a violation of his privilege against self-incrimination. A police officer testified at the hearing on the motion to suppress that defendant was advised of his rights as required by *Miranda v. Arizona,* (1966) 384

U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, both immediately following his arrest at his home and when he was brought to the police station. Defendant made no statement to the police but agreed to show them where he had abandoned the rifle. The weapon was located and recovered.

■ Defendant filed his motion to suppress on December 5. The trial judge denied the motion after hearing argument on December 8. He found that defendant's act of taking the police officer to the location of the gun was done knowingly and voluntarily. Defendant argues that he was never advised that his act of leading police to the rifle would have the same effect as if he had made a statement and could be used against him at trial. It is not necessary, however, for us to determine if the defendant was properly advised of his rights or if he made a knowing and voluntary waiver of them. Even assuming, arguendo, that constitutional error was committed here in the introduction of the rifle and testimony concerning its recovery, we believe such error was harmless beyond a reasonable doubt. See Chapman v. California, (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Dyer v. State, (1976) 168 Ind.App. 278, 342 N.E.2d 671.

In Greer v. State, (1969) 252 Ind. 20, 245 N.E.2d 158, appellant argued that certain oral and written statements given by her to police were improperly admitted at trial because she had not been properly advised of her constitutional rights prior to being questioned as required by Miranda, supra. These statements were admitted at her trial for the murder of her six-month-old son but were taken at the time of a previous assault on him. At the murder trial, however, appellant openly repeated on direct examination the complete story concerning the prior assault and the statements made to police. We found there that even if it was a federal constitutional error to admit those statements into evidence, it was harmless beyond a reasonable doubt. We checked there, as we must here, to make sure that the admission of those statements did not compel the defendant to take the stand in her own

defense to deny the statements or attempt to explain them away and that her counsel was not substantially restricted in his choice of defense tactics.

In this respect, the instant case presents an even stronger case than Greer for finding that any error in the admission of this evidence was harmless beyond a reasonable doubt. There were five eyewitnesses to the shooting of Terry Hayes who testified at trial that defendant shot Hayes with a rifle. The defendant admitted on the stand that he had a gun and that he had shot the victim. His only defense was that he acted in self-defense. It was not necessary for the State to introduce either the rifle or the testimony that defendant had led the police to it. The introduction of the rifle and the testimony in dispute neither forced defendant to take the stand nor constricted his counsel in his choice of defense tactics. Therefore, even if the trial court committed error in this regard, that error was harmless beyond a reasonable doubt.

## IV.

Defendant argues that the trial court erred in rejecting his challenge to the panel of prospective jurors. Before the swearing in of the jury on the first day of the trial, defendant called the clerk of the Washington Circuit Court who testified that the names from which the jury panel was chosen were obtained solely from voter registration lists. Defendant contends that this is contrary to the selection procedure mandated by Ind.Code § 33–4–5–2 (Burns 1975) which provides in part:

"Said commissioners shall immediately from the names of legal voters and citizens of the United States on the latest tax duplicate and the tax schedules of the county, examine for the purpose of determining the sex, age and identity of prospective jurors, and proceed to select and deposit, in a box furnished by the clerk for that purpose, the names, written on separate slips of paper of uniform shape, size and color, of twice as many persons as will be required by law for grand and petit jurors in the courts of the county,

for all the terms of such courts to commence with the calendar year next ensuing. Each selection shall be made as nearly as possible in proportion to the population of each county commissioner's district. In making such selections, they shall in all things observe their oath, and they shall not select the name of any person who is not a voter of the county, or who is not either a freeholder or householder, or who is to them known to be interested in or has cause pending which may be tried by a jury to be drawn from the names so selected."

Defendant claims that this statutory provision requires that names of prospective jury members be obtained from a combined list of registered voters and property owners. In *State ex rel. Brune v. Vanderburgh Circuit Court*, (1971) 255 Ind. 505, 265 N.E.2d 524, however, we expressly approved the use of a master voter registration list for the selection of prospective jurors. In *Taylor v. State*, (1973) 260 Ind. 264, 271, 295 N.E.2d 600, 605, *cert. denied*, 414 U.S. 1012, 94 S.Ct. 377, 38 L.Ed.2d 250, we reiterated that:

"[T]here must be a practical method of choosing prospective jurors. The use of lists, whether they be property taxpayers or registered voters, so long as they represent a reasonable cross section of the people in the county, cannot be said to violate the rights of the accused, in the absence of a showing that such use is made in a deliberate attempt to exclude certain groups from jury selection."

■ There was no demonstration here that the voter registration lists do not present a reasonable cross section of the people of the county or that their use resulted in the exclusion of certain groups from jury selection. The trial court did not err in overruling defendant's challenge to the jury venire.

## V.

■ Defendant next urges that the trial court erred in overruling his objections to the introduction into evidence of the rifle used in the crime and the bullet removed from the body of the victim because the State failed to establish a proper chain of custody with regard to these items. With respect to the rifle, Detective Sergeant Charles Mead of the Indiana State Police testified that upon recovering the weapon at the direction of the defendant, he placed his initials, the case number and the date on it before placing it into an evidence locker. It was later submitted to the State Police Laboratory for examination and then returned to another evidence locker before being brought into court. He identified his markings on the rifle at trial.

Upon almost identical facts, we found this chain and identification procedure sufficient for this kind of evidence in *Coleman v. State*, (1975) 264 Ind. 64, 339 N.E.2d 51. As we said in *Inman v. State*, (1978) 270 Ind. 130, 134, 383 N.E.2d 820, 823, *cert. denied*, 444 U.S. 855, 100 S.Ct. 114, 62 L.Ed.2d 74, "There is no reason in law or logic to doubt the authenticity of this gun or to refuse it in evidence on the basis of an improper chain of custody."

■ The bullet was similarly marked by Sergeant Mead who received it from Sergeant William Jean who had taken possession of it during the autopsy performed on Terry Hayes. It accompanied the rifle from that point and was identified at trial by Sergeant Mead, who also testified that both the rifle and the bullet were in substantially the same form and condition that they were when he first saw them. This identification is sufficient in this case to establish a proper chain of custody for these exhibits. *Coleman, supra.*

## VI.

During the course of the trial, the State introduced into evidence several color photographs of the scene of the shooting depicting spots or pools of blood where the victim had been after being shot. The defendant's objection to the admission of these photographs was overruled at trial, and he now claims that this was error as these items were inflammatory and prejudicial and were not offered to establish any of the material elements of the crime charged.

Photographs of the crime scene will be admitted even if they are repetitious and cumulative to some extent as long as they are competent and relevant aids to the jury in orienting themselves and in understanding the evidence. *Inman v. State, supra; Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482. These photographs were useful in helping to illustrate the testimony and to show the jury where the victim had been in the moments attending and following the shooting. The photographs were not gruesome and the trial court did not err in admitting them into evidence.

### VII.

Defendant claims that the trial court erred in refusing to give his tendered "Final Instruction Number 1" on the issue of self-defense which read:

"The law of the State of Indiana provides: 'When a defendant is in a place he has a right to be and without fault on his part is violently assaulted under such circumstances that he believes or has reasonable cause to believe that he is in danger of great bodily harm or of losing his life, he may without retreating, repeal force by force to any extent which is reasonably necessary, whether or not he believes that he can only defend himself by taking the life of his assailant and he may make use of a deadly weapon if its use is reasonably necessary in the reasonable defense of himself.' "

The trial judge gave the jury several instructions on the issues and law of self-defense. These embodied most of the principles found in defendant's tendered instruction. Included in these instructions was Indiana Pattern Jury Instruction (Criminal) § 10.03 which recited the pertinent sections of the Indiana statute on self-defense, Ind.Code § 35–41–3–2 (Burns Supp.1982). Defendant contends, however, that several matters covered in his tendered instruction were not substantially covered by the instructions given and relies on *French v. State,* (1980) Ind., 403 N.E.2d 821 in support of his contention that the failure to give his tendered instruction constituted reversible error.

The defendant in *French* tendered three self-defense instructions, all of which were refused. The trial court there gave two brief instructions on the issue—one a preliminary instruction and one a final instruction. After formulating a general, favored instruction on self-defense, we examined the respects in which the tendered instructions differed from those given and concluded that a combination of several deficiencies required that the case be reversed and the appellant granted a new trial. Defendant Lloyd argues that some of the same deficiencies are present here.

He first claims that the omission of the phrase "when a defendant is in a place he has a right to be" is error, but we dismissed this same contention in *French,* noting that "we do not see how the defendant could have been thereby harmed." *Id.* 403 N.E.2d at 825. He also notes that in *French* we found that while certain statements contained in the instructions were correct, fairness seemed to require counterbalancing statements in some instances. On this basis he claims that the omission of a statement in the instructions given that one who is not the aggressor is not required to retreat was error.

While we did find that lack of such a counterbalancing statement in *French* might have been misleading to the jury there, *French* may be distinguished from the instant case. We found there that "[a]ltogether the instructions, as given, without the inclusion of those tendered, tend to depreciate the defendant's defense." *Id.* 403 N.E.2d at 825. However, in the case before us now, the instructions were more complete and balanced and "the jury had the requisite information to enable it to make a proper application of the law to the facts." *Id.* The aggregate effect of the several instructions given here served to enhance the jury's understanding and not to denigrate the defendant's defense.

Defendant also claims that the omission of the phrase "when a Defendant ... without fault on his part is violently assaulted" he may defend himself. The

instructions did, however, include several statements about the defendant's right to defend himself against attack—the essence of the defense of self-defense. We find the instructions given adequate to instruct the jury and no significant imbalance detrimental to the defendant.

## VIII.

■ Defendant's final challenges are to the sufficiency of the evidence. He argues that the trial court erred in denying his motion for a directed verdict made at the close of the State's evidence and that the verdict returned by the jury is contrary to the law and the evidence. In reviewing claims of insufficient evidence, this Court neither weighs the evidence nor resolves questions of credibility, but only looks to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State,* (1970) 254 Ind. 401, 260 N.E.2d 558. If from that viewpoint there was evidence of probative value from which a reasonable trier of fact could conclude that a defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Taylor v. State,* (1970) 260 Ind. 64, 291 N.E.2d 890; *Glover v. State,* (1970) 253 Ind. 536, 255 N.E.2d 657.

■ The evidence most favorable to the verdict here shows that after first provoking an altercation with Hayes and Combs, defendant left to borrow a rifle. Upon his return, he shot and killed Hayes when Hayes approached the car in which he was riding. Although the defendant presented evidence to show that he acted out of fear of losing his life or receiving great bodily harm, the jury was not required to believe his version of the events. There was sufficient probative evidence from which the jury could have concluded that defendant could not have reasonably believed he was in sufficient danger to justify his use of deadly force and thus that he was guilty beyond a reasonable doubt.

The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.