Mancil WALLACE, Appellant,

v.

STATE of Indiana, Appellee.

No. 382S93.

Supreme Court of Indiana.

Sept. 20, 1983.

Rehearing Denied Nov. 16, 1983.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Stephen E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Mancil Wallace was convicted of Rape While Armed with a Deadly Weapon, Ind.Code § 35–42–4–1 (Burns Repl.1979) at the conclusion of a jury trial in Elkhart Superior Court on August 12, 1981. Wallace was also found to be a habitual offender. The trial court sentenced the defendant to fifty (50) years for the rape and enhanced the sentence by thirty (30) years for the habitual offender finding. The trial court reduced the enhancement by fifteen (15) years because the last previous conviction was over ten (10) years old. The defendant was given a total sentence of sixty-five (65) years imprisonment. He now appeals.

Four issues are raised on appeal, concerning:

1) whether the trial court erred in denying the defendant's motion for mistrial;

2) whether the trial court erred in refusing to admit evidence of the defendant's physical condition at the time he took a polygraph examination;

3) whether there was sufficient evidence to convict the defendant of rape; and,

4) whether there was sufficient evidence to sustain the habitual offender finding.

The facts tend to show that K.B. came home from work on October 30, 1980, at about 11:00 p.m., to her house in Elkhart, Indiana. K.B. lived in an apartment building which housed two other apartments. She put her two children to bed in their bedroom and then fell asleep on a mattress on the living room floor. She was awakened by the defendant, who held a gun on her and told her to be quiet or he would blow her head off. He later laid the gun down and produced a knife with which he threatened her and then raped her. Defendant left, telling K.B. he would harm her and her children if she told anyone about the incident. K.B. said she could see well enough to identify this man as Mancil Wallace. She did not know Wallace's name at that time but had seen him several times going in and out of her building and he at one time was in her apartment to repair the furnace. At that time, the defendant lived in an upstairs apartment in the same building. When Wallace was later apprehended by the police he had two knives in his pocket. One of these was admitted into evidence as State's Exhibit 1, and K.B.

identified this as appearing to be the knife Wallace had brandished during the rape. Wallace did not deny having sexual relations with K.B. on that night but claimed it was with her consent. He took a polygraph examination and all parties agreed to its admission into evidence. It was the conclusion of the polygraph examiner that Wallace was telling the truth when he said he had sexual relations with K.B. on that night but he was not telling the truth when he said it was with her consent and she was not forced by him.

## I

Defendant claims the trial court erred in denying his motion for mistrial based on an answer given by Officer Bossoum to a question by defense counsel during cross-examination. Defense counsel: "What led to the arrest of the defendant?" Officer Bossoum: "The subsequent taking of the statement from the victim, verification of her statement from a polygraph examination." The record shows a discussion was then held at the Bench outside the hearing of the jury, following which the trial court admonished the jury as follows:

> "THE COURT: I will admonish the Jury to disregard entirely the last remark made of the police officer. I'm also going to deny your motion for mistrial and again admonish the Jury to totally disregard the last comment made by the witness."

Although the trial court in its admonishment indicated it was overruling a motion for mistrial, there is no mistrial motion in the record as the discussion at the bench was not transcribed and is not a part of this record. Defendant claims the above action shows that a motion for mistrial was made although it is not apparent what grounds were raised in the motion. He claims it is apparent that the motion for mistrial would have been made based on the prejudicial content of the police officer's statement. As the State claims, to preserve an issue for appeal an objection must be specific and state the grounds therefor. *Brown v. State,* (1981) Ind., 417 N.E.2d 333;

*Lucas v. State,* (1980) Ind., 413 N.E.2d 578. Furthermore, the grounds for objection on appeal must be the same as those made at trial and any grounds not raised in the trial court are not available on appeal. *Brown, supra; Clark v. State,* (1978) 269 Ind. 316, 380 N.E.2d 550. Even though the court reporter did not record the bench conference, the defendant could have presented a record for appeal pursuant to Ind.R.App.P. 7.2(A)(3)(c) by submitting a statement of the evidence or proceedings and having it settled and approved by the trial court. This was not done and we are left to presume that proper grounds were raised before the trial court and were the same ones now presented to us on this appeal. The State therefore claims the defendant has not sustained his burden of providing adequate record for appeal and has therefore waived the issue. Although there is merit to the State's argument here, we can dispose of this issue on the merits. The denial of a motion for mistrial rests within the sound discretion of the trial court and will be reversed only upon a showing of clear error. *Johnson v. State,* (1982) Ind., 432 N.E.2d 1358. Clear error in the denial of a mistrial exists when the defendant has been placed in a position of grave peril to which he should not have been subjected. *Morgan v. State,* (1981) Ind., 419 N.E.2d 964. Here the trial court immediately and *sua sponte* admonished the jurors that the officer's statement was improper and should be disregarded by them in reaching their verdict. This is presumed to be sufficient to protect the defendant's rights and remove any error created by the objectionable testimony. *Avery v. State,* (1978) 269 Ind. 432, 381 N.E.2d 1226.

Furthermore, it does not appear that the testimony was the result of the State's misconduct, as it would be if the State purposely put it in for strategy reasons or to inject an evidentiary harpoon to prejudice the defendant. The State, in fact, had filed a motion *in limine* to prevent testimony regarding the polygraph examination given to the victim, K.B. and did not attempt in any way to put in this evidence. This officer was not the main witness for the State and

his testimony was brief and relatively insignificant. This answer was given after having been asked several questions on cross-examination, which began by asking him from what source he had received his background information on the case. He was then asked what specifically he had done after the offense report was generated. He was then further asked whether he had any direct knowledge of the offense and whether he really knew what had happened that night. He had already stated during this questioning that he knew only that the witness had made a statement and had implicated the defendant in the rape. After all of these detailed questions had been asked, including what he specifically had done and what he really knew about the proceedings, Bossoum was then asked what led to the defendant's arrest and he responded with the answer that the defendant finds objectionable. There is justification, therefore, for the State's contention that the witness was pushed into making the statement he did and that he did not purposely attempt to inject the victim's polygraph examination in order to bolster the State's case and prejudice the defendant.

■ The question remains whether the defendant was subjected to grave peril that could not be cured by the trial court's admonishment. The fact that a witness took a polygraph examination or the results of that examination are, of course, inadmissible unless there is a stipulation as to its admission by both parties. *Swan v. State,* (1978) 268 Ind. 317, 375 N.E.2d 198. Here there was a stipulation that a polygraph examination of the defendant was to be admitted and it was, in fact, admitted before the jury. There was other direct evidence, however, indicating the defendant's guilt so that the persuasive effect of this statement by the officer was not so prejudicial as to place the defendant in grave peril. *Williams v. State,* (1978) 268 Ind. 365, 375 N.E.2d 226. Defendant himself testified in the cause and admitted that he was at the victim's house that night and had sexual relations with her. He stated that the act was done with her consent and, as a matter of fact, at her suggestion. The polygraph examination of the defendant brought forth the operator's testimony that the defendant was not telling the truth when he said the victim consented to the act and he did not force her. In view of the circumstances, then, the trial court did not err in failing to grant a mistrial. *Williams, supra; Swan, supra.*

## II

■ Defendant claims the trial court erred in refusing to admit evidence of his physical condition at the time he underwent the polygraph examination. His claim is that he had a physical impairment that could be described as hypothyroidism which would affect the reliability of a polygraph. The polygraph operator did testify that excessively dry palms, which can be a symptom of hypothyroidism, would affect the "galvo" measurement of the test, which is one of three measurements used. He stated, however, that when he observed that the defendant did have extremely dry palms, he ran the test without using the "galvo" measurement and set it so it would produce a straight line. The operator therefore said the "galvo" measurement was not used in the defendant's test and played no part in his conclusions. He said his conclusions would be the same whether or not the defendant had a hypothyroid condition. The State had filed a motion *in limine* regarding any evidence of the defendant's physical condition. The record shows that at no time did the defendant attempt to put in any evidence of his having had a hypothyroid condition. The defendant did not call a physician and attempt to present testimony from him about his physical state nor did he offer evidence in any other manner or from any other witness or document tending to show that he did suffer from hypothyroidism. Trial court's ruling sustaining the motion *in limine* does not eliminate the necessity of an in-trial offer. *Alleyn v. State,* (1981) Ind., 427 N.E.2d 1095. This issue has been waived.

## III

The defendant claims the evidence is insufficient to show that he was armed with a deadly weapon during the commission of the rape. Thus, he argues that the felony should not have been raised to a class A felony.

This Court does not reweigh the evidence or judge the credibility of witnesses and will consider only that evidence most favorable to the State and all reasonable inferences drawn therefrom. When there is substantial evidence of probative value to support each element of the offense, the finding of the trier of fact will not be disturbed. *Napier v. State,* (1983) Ind., 445 N.E.2d 1361, 1366; *Jackson v. State,* (1980) Ind., 402 N.E.2d 947, 948. The defendant concedes a conviction for rape may be sustained solely on the basis of the testimony of the prosecuting witness. *Bonds v. State,* (1982) Ind., 436 N.E.2d 295; *Arnold v. State,* (1982) Ind., 436 N.E.2d 288. His only argument is that we should change our standard of review and require corroborating evidence to support the victim's claim that he was armed during the commission of the crime. Defendant contends that additional proof is required to raise the basic offense from a class B to a class A felony. This Court, however, treats this issue like any other issue concerning the credibility of witnesses. *See Smith v. State,* (1982) Ind., 432 N.E.2d 1363, 1372.

The victim testified he held a gun to her head and threatened to blow her head off. She further testified he used a knife to threaten her and rubbed the blade of the knife around her neck and face, telling her he would "mess her up." During the rape, the defendant held the gun in his hand. At trial, K.B. identified State's exhibit 1, which was a knife recovered from the defendant at the time of his arrest, as being similar to the one he had threatened her with during the rape. There was sufficient evidence presented to the jury here to support the finding that the defendant used a deadly weapon during the commission of this crime.

## IV

Finally, the defendant claims the evidence was insufficient to sustain the finding that he was a habitual offender. The State introduced the following evidence: Exhibit 7, which was a certified copy of documents from Michigan showing that a Mancil Wallace had been convicted of the felony of breaking and entering in the nighttime on January 20, 1958; Exhibit 8, consisting of certified copies of documents from Michigan showing that a Mancil Wallace had been convicted of armed robbery on April 25, 1963; and, Exhibit 10, consisting of the defendant's fingerprints, taken at the time of the arrest on the instant rape charge. Also admitted were Exhibits 11 and 12, which were fingerprint cards corresponding to the convictions stated in Exhibits 7 and 8 above. A fingerprint examiner for the Indiana State Police testified that the fingerprints on Exhibits 10, 11, and 12 were made by the same person.

Defendant's only dispute with the habitual offender finding is that the fingerprint examiner testified on cross-examination that it would take her fifteen to thirty minutes to count how many dots any two individual fingerprints shared in common, but that she spent a total of only fifteen to thirty minutes examining all three sets of fingerprints involved here. Thus, the defendant claims that her opinion was not substantial, probative evidence that the three sets of prints matched. The record shows, however, that the examiner testified, on direct and cross-examination, that she based her opinion on characteristics in the prints other than the dots and it was her opinion that the prints were all made by the same person.

The State's argument is well taken that assuming, *arguendo,* the issue of dots had any bearing on the reliability of the examiner's opinion, it would affect only the weight of her testimony and not its competency. *Rowan v. State,* (1982) Ind., 431 N.E.2d 805, 816. The weight of the evidence was, of course, to be decided by the jury as the trier of fact and it was for the jury to determine the credibility of the ex-

aminer's testimony. More significantly, however, the State introduced a transcript of the defendant's testimony at trial on the instant rape charge in which the defendant admitted he was the same Mancil Wallace who had been convicted in Michigan of armed robbery on April 25, 1963, and breaking and entering in the nighttime on January 20, 1958. There is therefore no merit to his argument at this point that there was insufficient evidence before the jury to find he was an habitual offender. The evidence was sufficient to prove that the defendant had accumulated two (2) prior unrelated convictions. *Williams v. State,* (1981) Ind., 424 N.E.2d 1017.

The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.