Charles SMITH, Appellant,

v

STATE of Indiana, Appellee.

No. 584S195.

Supreme Court of Indiana.

March 25, 1985.

Rehearing Denied May 30, 1985.

Barrie C. Tremper, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged with Murder and Felony Murder. He was also charged with being an Habitual Offender. In a trifurcated hearing, before a jury, appellant was found guilty of both Murder and Felony Murder. In a subsequent hearing the jury recommended the imposition of the death penalty. In the last hearing the jury found appellant to be an Habitual Offender. The trial court imposed the death penalty.

The facts are: At about 4:00 P.M. on December 10, 1982, Phillip Lee borrowed the car of his girlfriend, Carolyn Lamb.

He was joined in the car by appellant and a second friend, Briddie Johnson. The three left in the automobile to steal food and cigarettes from local food markets. After several unsuccessful attempts they decided to steal purses from the patrons of a local restaurant.

In preparation for this they drove appellant to his sister's home where he obtained a .32 caliber handgun. They then drove to the parking lot of the Elegant Farmer Restaurant in Fort Wayne, Indiana. They parked the car in a secluded location and awaited the arrival of likely victims.

Eventually appellant and Johnson left the car and placed stockings over their heads. Shortly thereafter, Brenda Chandler and Carmine Zink arrived in separate cars to attend a company Christmas party at the restaurant. Johnson approached Chandler while appellant sought out Zink. Johnson and Chandler struggled for her purse while appellant placed the gun at Zink's head and demanded her purse. During her struggle Chandler heard one gunshot. At that point her assailant fled. Chandler began to search for Zink whom she found on the ground with a wound to her head. Zink died as a result of a .32 caliber wound to her head.

The police, through their investigations, later arrested all three men. Lee and the State entered into an agreement under which Lee was to testify against the appellant. Lee testified as follows. Appellant obtained the gun at his sister's home and retained control over the gun for the course of the evening. Appellant sat in the backseat of the car toying with the gun and making sounds pretending he was firing the gun. Appellant left the automobile with a stocking over his head and the gun in his hand. Appellant placed his arm around the neck of the victim and the gun at her head. Appellant returned to the car with the gun and a purse which matched the description of the one used by Zink that evening. Lee did not see the actual firing of the gun; however, appellant told him he shot the woman and would shoot others in the future.

Appellant raises a sufficiency of the evidence question as to each of the findings of the jury. He argues there was a lack of sufficient evidence to support the finding on the underlying felony charges, the finding on a recommendation to impose the death penalty and the finding appellant was an habitual offender.

We will not weigh the evidence or judge the credibility of witnesses. *McCann v. State* (1984), Ind., 466 N.E.2d 421.

Appellant argues the testimony of Lee, the driver and only witness to place appellant at the scene and identify appellant as the assailant, is inherently unbelievable and thus insufficient to support the verdict. He argues Lee's testimony was tainted by the immunity grant and thus Lee had an incentive to provide testimony calculated to produce a conviction of appellant.

Appellant contends in capital cases the court must engage in a preliminary inquiry of the probative value of the evidence.

We decline appellant's invitation to establish a separate standard of review in capital cases. The uncorroborated testimony of an accomplice is sufficient to support a conviction. *Smith v. State* (1983), Ind., 455 N.E.2d 346. When the accomplice testifies, pursuant to a grant of immunity, the nature of the agreement must be fully disclosed and the testimony must be subjected to close scrutiny. Where disclosure has been made, the credibility and the weight to be accorded the testimony are matters for the trier of fact. *Kelley v. State* (1984), Ind., 460 N.E.2d 137.

In the case at bar the jury was fully informed of the nature of the agreement. The testimony of Lee was sufficient to support the verdict of the jury. We find no error.

At the onset of the hearing concerning the imposition of the death penalty the State properly moved to incorporate the evidence presented during the trial on the underlying felonies. Ind.Code § 35–50–2–9(d) expressly permits the trier of fact to consider this testimony. The State offered

no additional evidence. Appellant offered no testimony in his behalf. Appellant now contends the mere incorporation of trial evidence is insufficient to meet the standards outlined in Ind.Code § 35–50–2–9(a). The statute provides:

"The state may seek a death sentence for murder by alleging, on a page separate from the rest of the charging instrument, the existence of at least one (1) of the aggravating circumstances listed in subsection (b) of this section. In the sentencing hearing after a person is convicted of murder, the state must prove beyond a reasonable doubt the existence of at least one (1) of the aggravating circumstances alleged."

The State contends the incorporated evidence was sufficient to support a finding under Ind.Code § 35–50–2–9(b)(1) which states:

"The aggravating circumstances are as follows: (1) The defendant committed the murder by intentionally killing the victim while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery."

We hold the evidence introduced through incorporation was sufficient to support the conclusion appellant intentionally killed the victim while committing or attempting to commit robbery.

During the habitual offender phase of the proceedings, the State moved to incorporate the prior testimony. Within that testimony was appellant's admission of his participation in two prior unrelated felonies. Additionally, the State moved the admission of court records documenting these two felony convictions. The State had sought the admission of these exhibits earlier during the trial phase. However, the court found their introduction, at that point, to be premature and the State indicated a desire to wait until the habitual offender phase to introduce the records.

Appellant objected again to the introduction of the records during the habitual phase on the grounds the records were redundant or repetitive and an attempt to further inflame the jury. The court overruled the objection and the exhibits were admitted.

Appellant argues there was a lack of foundation to support the admission of the records. Additionally, he contends it was error to incorporate the prior testimony in the habitual offender phase of the trial.

■ We find appellant has waived the issue of an absence of a proper foundation by failing to object on those grounds at trial. *Wallace v. State* (1983), Ind., 453 N.E.2d 245. Moreover, these exhibits were properly admissible under Ind.R.Tr.P. 44(A)(1).

■ As to the incorporation question, appellant maintains the statute, Ind.Code § 35–50–2–8, does not expressly provide for the use of this device. He contends the State was obliged to demonstrate the existence of two unrelated prior felonies without the use of this device.

We first note the State did demonstrate the existence of the felonies with evidence apart from appellant's statements, during the trial, through the use of the two properly admitted exhibits discussed above.

■ Secondly, appellant has produced no authority to support his proposition of law. *See* Ind.R.App.P. 8.3(A)(7). Failure to comply with the rule results in waiver of the issue. *Hurley v. State* (1983), Ind., 446 N.E.2d 1326. We find sufficient evidence to support the finding of the jury that appellant is an habitual offender.

■ Appellant contends the trial court erred in the method used to select venireman. The court utilized a computer to generate a random list from the registered voters of Allen County. This was done pursuant to Ind.Code § 33–4–5–2. *See Pitman v. State* (1982), Ind., 436 N.E.2d 74. Appellant, a black male under thirty years of age, contends a list of this nature will not produce a jury of his peers. He suggests, without providing data to support the allegation, that the registered voters of the county are predominately white and over the age of thirty.

We have dealt with challenges to the method of jury selection on numerous occasions. Recently, in *Lloyd v. State* (1983), Ind., 448 N.E.2d 1062, we again considered the use of voter registration lists. Reiterating prior holdings, we stated:

" '[T]here must be a practical method of choosing prospective jurors. The use of lists, whether they be property taxpayers or registered voters, so long as they represent a reasonable cross section of the people in the county, cannot be said to violate the rights of the accused, in the absence of showing that such use is made in a deliberate attempt to exclude certain groups from jury selection.' " *Id.* at 1069 *See also Smith v. State* (1984), Ind., 465 N.E.2d 1105.

Appellant has offered no showing that the use of such lists deliberately exclude jurors based either on race or age. We find no error in the manner the trial court developed to produce lists of potential jurors.

 Appellant argues the trial court erred by failing to sequester the jury in a capital case. The law in Indiana requires sequestration when it is requested in such cases. It is reversible error to deny such a request over timely objection. *Lowery v. State* (1982), Ind., 434 N.E.2d 868 (Givan, C.J., and Pivarnik, J., dissenting).

 Appellant was represented by counsel; however, he also filed several pro se motions. One of these was a Motion to Sequester the Jury. Appellant would have his motions filed in the clerk's office and a file stamped copy returned to him at his cell. For reasons unknown to the court, this motion was not brought to the attention of the court during the course of the trial.

The court first became aware of the motion when the Motion to Correct Error alleged the failure to sequester the jury. The court reviewed its records, at that time, and found no record of the motion in its docket sheets or in the order book. Appellant's counsel did not request sequestration nor did he object on the occasions when the jury was allowed to separate with proper admonition.

To file a motion of this nature with the clerk and then fail to object when the jury is allowed to separate is to waive the right to allege error. The court did not err in not sequestering the jury.

 Appellant maintains the court erred when it engaged in conduct and made remarks which were prejudicial to appellant. He cites to four specific instances of alleged prejudicial conduct. Appellant failed to object to each of these alleged errors at the proper time. Three of the four comments were made to the parties during discussions at the bench and out of the hearing of the jury. Appellant suggests the jury may have been unduly influenced by observing these discussions. We find no merit in this argument.

 The last specific allegation of prejudicial conduct occurred when the court asked counsel for appellant to move away from the jury so the jury could see the witness.

This Court has stated:

"A trial court should refrain from making unnecessary comments and should remain impartial. Moreover, a trial judge's conduct should be such that his remarks or apparent attitude do not impart to the jury an appearance of partiality. It is important, however, that the trial court control the proceedings by taking responsible steps to insure that proper discipline and order exist in the courtroom." *Marbley v. State* (1984), Ind., 461 N.E.2d 1102, 1107.

We find the trial court did not act to impart to the jury any appearance of partiality. We find no error.

Appellant argues the court erred when it admitted State's exhibits five and six. These exhibits were two pre-autopsy photographs showing the wounds to the head of the victim. Appellant maintains the photographs were cumulative to the testimony of the physician who conducted the autopsy. He contends they were also unduly gruesome and highly inflammatory.

 Appellant did not object to the introduction of the photographs. To preserve an issue for appeal it is necessary for appellant to object and specifically state the grounds for the objection. *Wallace v. State* (1983), Ind., 453 N.E.2d 245.

 Appellant's failure to object constituted a waiver of the issue. We, however, note the admission of the photographs would have survived a challenge on the merits. A decision to admit evidence of this nature is at the discretion of the trial court and will be reversed only by a showing of the abuse of that discretion. *Jewell v. State* (1974), 261 Ind. 665, 309 N.E.2d 441. The trial court's ruling will not be disturbed absent a showing of an imbalance between the relevance of the exhibit and the tendency of the exhibit to improperly inflame the jury. *Akins v. State* (1981), Ind., 429 N.E.2d 232. The photographs were highly relevant as they demonstrated the nature and the location of the wound. There was no error in the admission of the photographs.

Appellant alleges error was committed when the jury was permitted to view appellant in handcuffs, shackles and ankle irons. He maintains potential jurors were able to view him in handcuffs and shackles as he was being transported to the courthouse. He contends three of these potential jurors were impaneled in his case. Additionally, he alleges he was restrained by ankle irons during the course of the trial. The record does not support these assertions.

 The general rule precludes the presentation to the jury of the defendant in bonds or shackles. In *Walker v. State* (1980), 274 Ind. 224, 410 N.E.2d 1190, citing *Illinois v. Allen* (1970), 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353, this Court adopted certain exceptions to this general rule. We permitted the trial court to use its discretion when necessary to prevent the escape of the prisoner, to protect those in the courtroom or to maintain order. There is no showing in this record that the trial court abused his discretion.

 Following trial both trial counsel and appellate counsel prepared separate Motions to Correct Error. Appellate counsel has briefed arguments selected from both motions. This is permissible. However, he has also asked this Court to review all other issues raised in appellant's Motion to Correct Error. These arguments were not briefed although appellant prepared a Memorandum of Law to support each issue. We decline counsel's invitation to review these unbriefed issues. Ind.R.App.P. 8.3(A)(7) specifically requires the briefing of all issues to be reviewed.

The United States Supreme Court recently found an appellant did not have an absolute right to require appellate counsel to raise and argue every issue on appeal that the appellant desired to be raised. *Jones v. Barnes* (1983) 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987. In *Jones* the Court focused on the function of appellate counsel to review the record and the issues preserved for appeal and then to winnow the more promising from the least promising. The Court noted the danger in burying a strong argument under a verbal mound of both strong and weak contentions. Appellate counsel has properly engaged in the winnowing process. We decline to review the issues not in the appellate brief.

The trial court is affirmed in all things. This cause is remanded to the trial court for the purpose of establishing a date for the execution of appellant.

HUNTER, PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., concurring and dissenting with separate opinion.

DeBRULER, Justice, concurring and dissenting.

Intent to kill, like other states of mind, may be inferred from circumstances which legitimately permit it. *Stanley v. State* (1969), 252 Ind. 37, 245 N.E.2d 149. There is a substantial question presented here as to whether the evidence proved an intent to kill as well as an intent to rob. Since opinions in death cases are likely to be used

for comparison purposes, I set forth here my own view of the evidence supporting the intent to kill.

Appellant took a gun in hand to use in carrying out a plan to go out and steal something. He thus had time to contemplate possible harmful consequences to others. He loaded that gun. While handling it he said "Bang," "Pow", from which it may be inferred that he contemplated its operation and the act of firing it. After observing the victim, he got out of the car; he approached her and seized her, holding her head under one arm while holding the gun against her head with his other hand. According to appellant her body went limp while he so held her. There was no struggle between the two. A very short time expired between the time he left the car and the shot was fired. When appellant returned to the getaway car he held a purse.

The trial judge concluded as trier of fact, beyond a reasonable doubt, that appellant intended to kill his victim. I agree that that determination was warranted. The shot was to a vital part of the body at point blank range. The immediate goal was to force the victim to relinquish control of her property. To accomplish this purpose, while both hands were occupied, appellant deliberately fired. This was a robbery by killing, and satisfies the subjection of appellant as provided by statute, to the next step of weighing the aggravating circumstance against mitigating circumstances. I.C. 35–50–2–9(e)(2).

With regard to the sentencing process required by I.C. 35–50–2–9, I find that the trial court applied an irregular legal standard, one not contemplated by the death statute, and that the sentence of death must be vacated. According to the death sentence statute, aggravating circumstances are restricted to those enumerated in I.C. 35–50–2–9(b), alleged in a separate count of the charge, and proved to the satisfaction of the judge beyond a reasonable doubt. In this case there is but one single and discrete aggravating circumstance. There are no others. And appel-

lant's death sentence must rest solely upon that aggravating circumstance. One cannot be confident that under the trial court's finding and conclusions that such is the case. In them the court makes two express references to aggravating *circumstances* outweighing mitigating circumstances, a reference to his awareness through the presentence report of the defendant's criminal history, and a reference to the fact that the defendant "executed a defenseless female victim who was offering no resistance to the robbery." As is clear from the death sentence statute and the charge in this case, there is only one aggravating circumstance and therefore the reference to aggravating circumstances in the plural is wrong and presents the possibility of unfairness. *Schiro v. State* (1983), Ind., 451 N.E.2d 1047. The references to criminal history and to the very seriousness of the crime by there very nature are elements which tend to weigh in favor of an enhancement of penalty. Yet they are not accorded that weight in the death sentencing statute, and the court has no authority to put them there and to permit the death decision to rest to any degree upon them.

I hasten to point out that this defect in the sentencing process was not presented to the trial court or this court in the briefs. Even without such presentation and complaint, however, I believe it essential to the automatic review process in death cases for this court, on its own, to require strict compliance with each step required by the death sentence statute.