Michael S. **MAYS**, Appellant,

v.

**STATE** of Indiana, Appellee.

No. 1283 S 442.

Supreme Court of Indiana.

Oct. 29, 1984.

A. Leon Sarkisian, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On May 20, 1983, Defendant-Appellant Michael S. Mays was convicted of robbery, a class A felony in the Lake Superior Court. On June 9, 1983, Appellant was sentenced to serve twenty-one (21) years in the Indiana Department of Corrections. He now appeals this judgment and presents the following two issues:

1. error by the trial court in determining Appellant's confession was admissible evidence; and

2. error by the trial court in denying Appellant's motion for a mistrial.

Early in the morning of March 13th, 1982, two men, one of whom was Appellant Mays, entered the Save More grocery store located at 33rd and Grant Street in Gary, Indiana. They accosted the security guard, Frank Caster, by pointing a gun in his face, and then wrestled Caster to secure his gun. Caster recounted that when he first saw the men enter they wore no masks; rather, the men pulled on masks during the scuffle with Caster. As soon as the men accosted Caster, Caster yelled to attract help. When Joanne Klaker, a cashier, observed the encounter, she stooped and called for the managers over the intercom system. Douglas Boltovitz, the assistant manager, heard Klaker and ran to the front to see the two men fighting with Caster. Boltovitz entered the struggle, and then noticed Appellant had a gun. Appellant pointed his gun at Boltovitz and fired one shot which caused a life threatening injury.

Following the shooting of Boltovitz, Appellant's partner obtained Caster's gun. Boltovitz managed to flee to the store's courtesy booth where he got his gun. Appellant in the meantime approached Klaker, told her he would take the money from the cash register, took the money, and went out the door. Appellant's partner, with Caster's gun in hand, went to the courtesy booth. As he entered the booth Boltovitz shot him. The store manager, Bob Barth, saw Boltovitz was shot, and ran out the back doors of the store. As he did, he saw Appellant walking along the side of the building with a handgun. Barth hid and watched Appellant walk north and east away from the store. Appellant had taken seventy-nine dollars ($79.00).

Appellant was promptly arrested by Officer Roscoe Flemming, who observed him run across the street and walk north to a wooded area. Appellant was apprehended as he lay face down in the wooded area. He was taken back to the store by Flemming where he was positively identified as one of the robbers by eyewitnesses. Then Appellant assisted Flemming in retracing Appellant's steps so as to gather physical evidence. Flemming, during a hearing on Appellant's oral motion to suppress physical items, testified he did not give Appellant Miranda warnings before having him retrace his steps. Sergeant Robert Herma, during the same suppression hearing, testified that after Appellant was identified, he asked him where his coat was, and requested Appellant to take Flemming to it. Herma had previously been informed Appellant was wearing a green coat.

Appellant and Flemming recovered the coat, the glove, and stocking mask from the wooded area while Herma recovered the gun from an area nearer to the store. Appellant was once again brought back to the store, and at this point Appellant was first advised of his constitutional rights by Herma. Appellant acknowledged understanding his rights and waived them by agreeing to tell Herma everything without an attorney present. Appellant then made an oral statement tantamount to a confession.

Sergeant Joseph Slay, Jr., testified that when Appellant was brought to the police station he advised Appellant of his *Miranda* rights and that Appellant indicated he fully understood the rights. Appellant then signed a waiver of rights form, and gave Slay a written confession.

The trial court granted Appellant's motion to suppress physical evidence and ruled the coat and gun inadmissible because they were found as a result of Appellant's custodial interrogation without Appellant first being advised of his *Miranda* rights. Appellant's counsel also moved to suppress the written confession made by Appellant as a result of his being allegedly confronted with illegally obtained evidence. The trial court denied this motion and admitted the written confession.

During *voir dire* Appellant's counsel moved for a mistrial based upon the prosecutor's use of peremptory challenges to allegedly exclude all potential black jurors. Appellant argued such conduct violated his right to an impartial jury drawn from a fair cross section of the community as provided by the Sixth Amendment to the United States Constitution. The prosecutor exercised four of seven peremptory challenges to exclude four of five black prospective jurors. The fifth potential black juror was excused for cause, however, one of the two alternate jurors was a black person. The court denied Appellant's motion for mistrial.

### I

■ Appellant first asserts the trial court erred when it denied Appellant's motion for a mistrial during *voir dire*, and alleges the State through its exercise of peremptory challenges was engaging in the systematic exclusion of black persons from the jury.

The State exercised seven peremptory challenges to prospective jurors, four of which eliminated four black persons from the jury. A fifth prospective black juror was excused for cause by the court. Consequently, an all caucasion jury heard this

case against Mays, who is black. However a black man was chosen as one of two alternate jurors. The chosen jurors indicated to Appellant on *voir dire* they would be color blind and would decide the case solely on the evidence. The prosecutor, in response to Appellant's allegation of systematic exclusion of blacks, denied any racial motivation on his part, cited to his history in that court of having black people on the juries of his prior cases, and stated the all caucasian jury in this instance developed by chance.

Appellant claims he was denied a fair trial due to a prejudicial racial imbalance in the jury caused by the Prosecutor's racially motivated use of peremptory challenges. He urges us to overrule our long standing following and application of *Swain v. Alabama*, (1965) 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, and to establish new case law regarding the use of peremptory challenges by the State. In doing so, he seeks to have this Court establish new case law guaranteeing a defendant a sixth amendment Constitution to the United States and an article 1, section 13 of the Indiana Constitution right to an impartial jury drawn from a cross section of the community. Appellant argues that the Supreme Court's holding in *Taylor v. Louisiana*, (1975) 419 U.S. 522, 537, 95 S.Ct. 692, 702, 42 L.Ed.2d 690, is the basis upon which we should grant him relief, notwithstanding the fact that in the past we have denied relief in cases involving the same factual pattern basing such decisions upon *Swain*. We do not agree.

In *Swain*, the United States Supreme Court held that an exercise of peremptory challenges which resulted in the selection of a jury composed of white jurors did not of itself show a constitutional violation. Under *Swain*, a constitutional issue of equal protection could not arise unless there was a systematic and purposeful exclusion of blacks because of race from juries in case after case. *Swain, supra.*

The Supreme Court held in *Taylor* that it is fundamental to the sixth amendment right to a jury trial that the selection of a petit jury be from a representative cross section of the community. The issue, as stated by the Supreme Court, was, "whether the presence of a fair cross section of the community on venires, panels or lists from which petit juries are drawn is essential to the fulfillment of the sixth amendment's guarantee of an impartial jury trial in criminal prosecutions." *Taylor, supra.*

There is no allegation or showing by Appellant that the venire in this case consisted of a nonrepresentative group of the community. Accordingly, Appellant has neither attempted nor shown a violation of a Sixth Amendment right under *Taylor*. Nor will we interpret the holding in *Taylor*, as Appellant urges us to, as requiring a particular jury to be a cross section of the community.

Furthermore, Appellant has made no showing of an equal protection violation under *Swain*. Appellant neither alleges nor proves systematic and purposeful exclusion of blacks because of race from juries case after case.

We clearly decline to establish new case law regarding the use of peremptory challenges by the State and continue to rely upon *Swain* in dealing with the issue at hand. As we have said on numerous occasions, a peremptory challenge is what the name implies; there is no need for the prosecution to explain its reasons for the exercise of such a challenge. *Hoskins v. State*, (1982) Ind., 441 N.E.2d 419. Accordingly, Appellant has shown us no error on this issue.

## II

 The second issue Appellant Mays raises is whether the trial court erred by determining his written confession was voluntary and therefore admissible evidence.

Appellant was arrested a short time after the robbery by Officer Roscoe Flemming; however, he was not read his *Miranda* rights until later. He was then transported back to the store by Flemming where he was positively identified as one of the robbers by several eyewitnesses.

Flemming testified, during a hearing on Appellant's oral motion to suppress physical evidence, he did not advise Appellant of his constitutional rights prior to having Appellant retrace his steps to the point where he was apprehended. Sergeant Robert Herma, during the same hearing, testified that after Mays was brought to the store by Flemming for identification, Herma asked Appellant where his coat was. Herma had been informed that Appellant had been wearing a green coat at the time of the robbery. Herma requested Appellant to take Flemming to where he had thrown his coat and Appellant agreed to do so. Appellant and Flemming recovered the coat from the wooded area while Herma recovered the gun nearer to the store. When Appellant was brought back to the store, he was first advised of his constitutional rights by Herma. Appellant acknowledged understanding his rights and waived those rights by agreeing to tell Herma everything without an attorney present. Mays proceeded to make oral statements to Flemming tantamount to a confession.

Sergeant Joseph Slay, Jr., testified he advised Appellant of his Miranda rights after he was brought to the police station, and after Appellant indicated his understanding of his rights, he signed a waiver of rights form. Appellant then gave Slay a written confession.

The trial court denied Appellant's motion to suppress the written confession which Appellant alleged was a result of being confronted with illegally obtained evidence. The confession was admitted and Appellant now claims the court's action constitutes reversible error.

The admissibility of a confession is controlled by determining from the totality of circumstances whether or not the confession was given voluntarily and not through inducements, violence, threats, or other improper influences so as to overcome the free will of the accused. *Smith v. State*, (1982) Ind., 432 N.E.2d 1363, 1369. The trial court determines if the confession was voluntarily given. We review the question on appeal as we do other sufficiency matters; we do not weigh the evidence. We determine if there was substantial evidence of probative value to support the finding of the trial court. *Id.*

The trial court correctly relied upon the following rationale of *Rohlfing v. State*, (1951) 230 Ind. 236, 243, 102 N.E.2d 199, 202, in determining the admissibility of Appellant's written confession:

"But the fact that evidence illegally obtained by an unreasonable search or seizure may not be used against the accused does not necessarily mean that admissions by him during the progress of, or following such a search may not be used."

Furthermore, Indiana cases have held that confrontation with incriminating evidence does not amount to coercion or render the confession thereby inadmissible. *Ward v. State*, (1980) Ind.App., 408 N.E.2d 140. *See also, Ford v. State*, (1982) 439 N.E.2d 648, *trans. denied.*

Substantial evidence of probative value existed regarding the voluntariness of Appellant's confession from which the trial court could determine properly the admissibility of the confession. Although Appellant was aware of the police possessing the gun and coat before he gave his confession, and he did not know this incriminating evidence would be suppressed, he also knew several eyewitnesses had positively identified him. The trial court, therefore, had substantial evidence of probative value indicating the police's possession of incriminating physical evidence was not so psychologically coercive as to have caused Appellant to confess against his free will. The trial court could have reasonably concluded Appellant voluntarily confessed because witnesses could identify him and he was apprehended immediately after and very near the scene of the crime. The trial court did not err by admitting Appellant's written confession.

The judgment of the trial court is affirmed.

GIVAN, C.J., HUNTER, DeBRULER and PRENTICE, JJ., concur.