Jay R. THOMPSON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 882S303.

Supreme Court of Indiana.

April 25, 1986.

Rehearing Denied July 15, 1986.

Timothy R. Dodd, Evansville, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

DICKSON, Justice.

Defendant-Appellant Jay R. Thompson was found guilty by a jury in the Harrison Circuit Court of two counts of intentional killing while committing the crimes of burglary and robbery. The State requested the imposition of the death penalty but the jury declined to recommend it be imposed. The trial judge, however, found two aggravating circumstances present: intentionally killing during the commission of burglary and robbery and conviction of another murder. Accordingly, he ordered the imposition of the death penalty. The fifteen issues presented by the defendant for our review in this direct appeal are as follows:

1. denial of Defendant's motion to sequester the jury during trial;

2. imposition of the death sentence after the jury had declined to recommend it;

3. unconstitutionality of the Indiana death penalty scheme;

4. the trial court's failure to properly find aggravating factors supporting the death sentence;

5. failure of the trial court to enter judgment prior to sentencing;

6. denial of Defendant's motion to strike the jury venire panel;

7. *voir dire* of the jury during trial by the trial judge;

8. admission into evidence of photographs and slides of the crime scene;

9. overruling of Defendant's objections to the State's amendment of its witness list;

10. improper examination of a witness regarding Defendant's employment record;

11. improper cross examination of Defendant regarding prior inconsistent statements;

12. denial of Defendant's motion for a psychiatric examination of a State's witness;

13. denial of tendered verdict forms on lesser included offenses;

14. error of the court in ruling on Defendant's objections and motions; and

15. newly discovered evidence.

The testimony and evidence at trial showed that Richard Dillon and Defendant Jay R. Thompson planned to burglarize the home of William and Mary Hilborn in Petersburg, Pike County, Indiana, about three days prior to March 8, 1982. On Sunday, March 8, 1982, Dillon and Thompson drove to Petersburg, observed the area of the Hilborn home and passed the church the Hilborns attended. Apparently presuming that the Hilborns were still in church, they parked Thompson's green Pinto automobile some blocks from the Hilborn residence and proceeded there on foot. When they arrived, they found the Hilborns at home so they obtained entry by pretending to be looking for one Eddie Beadles. After being admitted to use the phone, they accosted the Hilborns to obtain money that was known to be kept by Hilborns in their home. Dillon possessed a "buck" knife and Thompson a folding pocket knife. During the confrontation and scuffle Dillon stabbed each of the Hilborns with his "buck" knife, injuring them. After stabbing Mr. Hilborn, both Dillon and Thompson forced Mary Hilborn, by holding a knife under her chin, to obtain money for them. Dillon then cut the telephone line and stabbed Mrs. Hilborn. After she fell to the floor, Dillon cut her throat with the "buck" knife. As they were leaving the house, Thompson stopped near the kitchen door and told Dillon they could not leave until they were sure the Hilborns were dead. Thompson then stabbed both Hilborns to ensure they were dead. According to Dr. Pless, the pathologist, the fatal wound to William Hilborn's chest and heart was not made by the "buck" knife but by a knife similar to or the same as the folding knife carried by Thompson. The knife's angle of entry into the chest indicated that the assailant was kneeling on the right side of William Hilborn and the size of the wound and time inflicted indicated defendant Thompson inflicted the wound to the chest and heart of William Hilborn with the folding knife. Dr. Pless further testified the wound in Mrs. Hilborn's back indicated she was lying on her side at the time of the infliction of the back wound which pierced her aorta. The size of the wound in the back indicated the use of a knife smaller than the "buck" knife. The blood on her dress around the back of her shoulders, the back of her neck and on the carpet immediately adjacent to her back and shoulders, indicated she bled from the neck onto the carpet while lying face up. The position of her body indicated she was rolled to her left prior to being stabbed in her back. Dillon at first denied any complicity in these crimes but later testified for the State and implicated Thompson in the two murders. Dillon's testimony was corroborated by police investigation which revealed human blood on Defendant Thompson's jeans and human blood similar to the victim's on one of Defendant's gloves. Thompson was a seventeen (17) year-old juvenile when he committed these crimes, but the juvenile court waived jurisdiction and he was tried as an adult. The jury found Defendant guilty of the murders but did not recommend the death penalty. The trial judge, however, found statutory aggravating circumstances to exist and imposed the death penalty on Defendant Thompson.

I

Appellant Thompson claims the trial court committed reversible error by denying his Motion to Sequester the jury, citing *Lowery v. State* (1982), Ind., 434 N.E.2d 868, *reh. denied*, (Givan, C.J., and Pivarnik, J., dissenting). The record shows that on January 28, 1982, both Appellant and the State accepted the jurors and alternates selected to try Appellant's case and the jurors and alternates were sworn by the trial judge. The trial judge then admonished the jury preparatory to releasing it for the evening. At this point Appellant made an oral motion to have the jury sequestered for the trial. The trial judge denied the motion. The jury was then allowed to separate each night following a detailed admonition by the trial judge not to discuss the case with anyone nor to read or listen to any news accounts of the trial.

About midway through the trial, the State requested the court to *voir dire* the jury to determine whether any of them had been exposed to a certain TV program that discussed the death penalty. The trial judge did *voir dire* the members of the jury who demonstrated they had not to that point been exposed to extraneous sources of information concerning the trial and their judgment had not been affected in that manner. From that point on, however, the trial judge did sequester the jury until a verdict was reached. On March 5, 1982, the jury recommended against the death penalty. At sentencing on March 18, the trial court imposed a sentence of death.

It is true in *Lowery, supra,* a majority of this Court held that when a motion to sequester is timely made in a capital case, sequestration is mandatory and failure to order sequestration is reversible error. Further, Appellant is not required to demonstrate prejudice by the failure to sequester the jury. In *Lowery, supra,* the motion for sequestration of the jury was made prior to trial and was clearly timely. Here, the motion was made not as timely. It was made after the jury had been chosen and sworn and was about to be released for the day. This restricted the opportunity for the prospective members of the jury to be questioned and selected considering the effect the sequestration might have on their ability to serve in an extended trial, and it hampered the court's advance preparations to accommodate a sequestered jury. More important here is the fact that the jury recommended against the death penalty. In all cases other than capital offenses, sequestration is not mandatory. *Corder v. State* (1984), Ind., 467 N.E.2d 409. The purpose of jury sequestration in a capital case is primarily to prevent outside influence from reaching the individual juror and affecting the life or death choice. Since this jury recommended against the death penalty, the error in refusing to sequester the jury is harmless. The life recommendation of this jury demonstrates that the jurors were not subjected to influence or if they were, they were able to resist it. We therefore find no reversible error on this issue.

## II

■ Appellant claims the trial court erred in imposing the death sentence notwithstanding the jury recommendation that the death sentence not be imposed. This issue already has been determined by this Court adverse to Appellant's position. In *Schiro v. State* (1983), Ind., 451 N.E.2d 1047, *cert. denied,* 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699, 479 N.E.2d 556 *cert. denied,* —— U.S. ——, 106 S.Ct. 1247, 89 L.Ed.2d 355, this Court held that the jury decision on a death sentence is merely a recommendation and the trial court may impose the death sentence even if the jury recommends against it. Ind.Code § 35–50–2–9(e) (Burns 1982) expressly provides that the trial court is to set the sentence and is not bound by the jury's recommendation. The United States Supreme Court in *Spaziano v. Florida* (1984) 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340, upheld a death sentence imposed by the trial judge overriding a jury's recommendation of life. Finding nothing that suggested that the jury-override procedure resulted in arbitrary or discriminatory application of the death penalty, either in general or in that particular case, the opinion noted that the trial judge is required to conduct an independent review of the evidence and to make written findings regarding aggravating and mitigating circumstances, and further that the State Supreme Court must review every capital sentence to ensure that the penalty has not been imposed arbitrarily or capriciously. No reversible error is presented on this issue.

## III

■ Appellant attacks the constitutionality of the Indiana Death Penalty Statute on several grounds. He first filed motions to dismiss the death penalty counts, claiming there were no facts to support them and that it was unconstitutional to charge a juvenile with the death penalty. At trial the defendant renewed his motions to dis-

miss, arguing there were no aggravating factors to support the death penalty counts. The record clearly reveals, however, that Counts XVII and IX charge Defendant with intentionally killing while attempting to commit burglary and robbery and this clearly falls within one of the statutory aggravating factors pursuant to Ind.Code § 35–50–2–9(b)(1). There further was a showing that two people were killed in this crime, which falls within the purview of an aggravating factor pursuant to Ind.Code § 35–50–2–9(b)(8).

■ Nothing in the statutory or constitutional provisions of this State indicates it is improper to impose the death penalty on a juvenile. Defendant Thompson, at the time of the commission of these crimes, was seventeen years of age. The juvenile code expressly provides that a juvenile of Defendant's age who is charged with homicide shall be waived from the juvenile court and tried as an adult unless it is in the best interest of the child and of the safety and welfare of the community for him to remain within the juvenile justice system. Ind.Code § 31–6–2–4(d)(3) (Burns 1982). Defendant does not challenge the waiver order in this case. Furthermore, there is no provision in this statute or any other referring to juveniles that excludes a waived juvenile from any of the penalties that may be meted out to an adult felon. The death penalty statute does permit the court to consider as mitigating factors the defendant's capacity to appreciate his conduct or to conform his conduct to the law and any other appropriate circumstances. Ind.Code § 35–50–2–9(c)(6), (7). Both of these circumstances could include a defendant's age. We agree with the State that these statutes clearly indicate the Legislature intended the death sentence statute in Indiana to apply to juveniles as well as adults. Since the youth of the offender may be considered as a possible mitigating factor, the death sentence may properly be imposed upon a juvenile.

Appellant also claims the Indiana death penalty statute is unconstitutional in that it imposes cruel and unusual punishment and no proportionality is required. This Court has held on several occasions that the Indiana death penalty statute is not unconstitutional and that the use of the death penalty does not constitute cruel and unusual punishment. *Smith v. State* (1984), Ind., 465 N.E.2d 1105, *reh. denied; Resnover v. State* (1984) Ind., 460 N.E.2d 922, *cert. denied,* —— U.S. ——, 105 S.Ct. 231, 83 L.Ed.2d 160. We have further held that proportionality review of death sentences is not constitutionally required. *Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied,* —— U.S. ——, 105 S.Ct. 816, 83 L.Ed.2d 809; *Smith v. State, supra; Schiro, supra.*

IV

Appellant argues on appeal that since the jury did not recommend the death sentence this was virtually a finding by the jury that there were no aggravating factors and the death penalty therefore was improperly imposed. Appellant further claimed the trial court's reasons for the death sentence are not supported by the evidence. With respect to Appellant's first contention, as we have indicated in Issue II above, the jury only recommends the sentence and it is for the trial court to determine the appropriate sentence. The trial court need not accept the recommendation of the jury and may impose the death sentence regardless of the jury's recommendation. *Spaziano, supra; Schiro, supra.*

The statutory procedure to be followed when the State seeks imposition of the death sentence, Ind.Code § 35–50–2–9, requires the State to allege at least one of several specific denominated aggravating circumstances when charging the crime, and then requires the State to prove beyond a reasonable doubt "the existence of at least one of the aggravating circumstances alleged." Among the aggravating circumstances listed in the statute are:

(1) The defendant committed the murder by intentionally killing the victim while committing or attempting to commit arson, burglary, child molesting, criminal

deviate conduct, kidnapping, rape, or robbery.

(7) The defendant has been convicted of another murder.

(8) The defendant has committed another murder, at any time, regardless of whether he has been convicted of that other murder.

Section (e) of the death sentence statute requires the court, in making the final determination of the sentence, to consider the jury's recommendation, and to base the sentence on "the same standards that the jury was required to consider."

The charging information filed by the State requested the death sentence, alleging only the following as aggravating circumstances accompanying the murders:

 a. While committing or attempting to commit burglary;

 b. While committing or attempting to commit robbery.

Excluded from the death sentence requests was any express mention of factors (7) and (8) above. However, both murders were charged as separate counts and were tried at the same time.

It has been held permissible for the State to charge but one aggravating circumstance at the time of filing the charging instrument, but then to prove additional aggravating circumstances during the sentencing hearing. *Davis v. State* (1985), Ind., 477 N.E.2d 889; *Zant v. Stephens* (1983), 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235.

In the final jury instructions for the death penalty phase, the jury was instructed as follows:

The State is seeking the death penalty in this case by alleging upon a separate page from the criminal information the existence of the following circumstances, as follows:

The law provides for the penalty of death upon conviction for the crime of murder under the following circumstances.

The defendant (1) committed the murder by intentionally killing the victim while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape or robbery. (7) He has been convicted of another murder.

Omitted from the court's final instructions to the jury was the aggravating circumstance (8) regarding commission of another murder at any time, regardless of whether convicted.

In normal usage, the term "conviction" is not synonymous with the return of a guilty verdict, but rather means the entry of a judgment of conviction. *McMinoway v. State* (1973), 260 Ind. 241, 294 N.E.2d 803; *Carter v. State* (1977), 266 Ind. 140, 361 N.E.2d 145 *cert. denied* 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142. However, the legislature arguably used a broader definition of the term in the enactment of IC 35–50–2–9. In addition to using the term "convicted" in aggravating circumstance (7), the term "convicted" is used at IC 35–50–2–9(d):

If the defendant was *convicted* of murder in a jury trial, the jury shall convene for the sentencing hearing; ... (Emphasis added).

This would support the contention that the term "convicted" in aggravating circumstance (7) was intended to signify the return of a guilty verdict, without requiring the entry of a judgment. However, if this meaning is assumed, then there would be no apparent reason for separately specifying both aggravating circumstances (7) and (8).

■ Furthermore, unlike aggravating circumstance (8), which clearly states that the other murder may have been committed "at any time," the legislature did not so designate in aggravating circumstance (7). Thus it may also be argued that for conviction of another murder to serve as an aggravating circumstance warranting consideration of a death sentence, the prior conviction must have existed at the time of commission of the principal murder charged. Such interpretation would be consistent with our rule that criminal and penal statutes must be strictly construed

against the State and in favor of the defendant where construction is necessary. *Short v. State* (1954), 234 Ind. 17, 122 N.E.2d 82. Therefore, at the time of the jury's deliberation of the death sentence, the defendant, strictly speaking, had not yet been "convicted" of another murder; but the jury, by their guilty verdicts, found that the defendant had actually "committed" another murder.

█ As noted previously, IC 35–50–2–9(e) expressly demands that the trial court's final determination of sentence must be based on the same standards that the jury was required to consider. In the extremely thorough and extensive findings supporting his decision, the trial court judge expressly stated that he found the presence of only two aggravating circumstances:

(1) The defendant committed the murder by intentionally killing the victim while committing or attempting to commit ... burglary ... or robbery.

(7) The defendant has been convicted of another murder.

The Judgment of the trial court, however, failed to contain any reference to the aggravating circumstance (8). Thus, using the traditional narrow meaning of the term "conviction," the judge based his death sentence upon an aggravating circumstance which had not been available for the jury to properly consider at the time of their death sentence deliberations.

The instant case is distinguishable from both *Judy v. State* (1981), 275 Ind. 145, 416 N.E.2d 95, and *Davis v. State* (1985), Ind., 477 N.E.2d 889. Both of these cases involved a request for death sentence for the commission of multiple murders. But in both cases there was a specific charge of aggravating circumstance (8), commission of another murder whether convicted or not. In the instant case, this aggravating circumstance is omitted from both the final instructions to the jury and from the trial court's findings supporting the death sentence.

It is recognized that the foregoing defects and inconsistencies are only technical in nature. The charging documents clearly alleged, and the jury found, that the Defendant had committed another murder. If the final instructions and the trial court judge's expressed findings had recited aggravating circumstance (8) regarding commission of another murder at any time whether convicted or not, instead of circumstance (7), conviction of another murder, [or if the judge's findings had based the death sentence solely on aggravating circumstance (1) without mention of (7) or (8)] then the court's final determination of the sentence would have been "based on the same standards that the jury was required to consider," as required by statute.

In *State v. McCormick* (1979), 272 Ind. 272, 397 N.E.2d 276, aggravating circumstance (8) was held to be unconstitutionally applied because the alleged prior murder was not there related to the principal charge. However, in the case at bar, the murder claimed as an aggravating circumstance was found to have been committed by this jury in the trial of the defendant upon the principal charges. Thus *McCormick* would not have prevented use of aggravating circumstance (8) in the instant case.

We are here faced with reviewing the propriety of imposing society's maximum and ultimate penalty, the death sentence. Our extreme caution is further compelled because the trial judge's sentence of death was contrary to the jury recommendation. While logic and common sense certainly support this Court's decision to overlook the technical deficiencies seen here, when reviewing a death sentence we prefer meticulous procedural obedience.

## V

█ Appellant claims the trial court failed to formally enter judgment on the verdict of the jury prior to sentencing him and that therefore the sentencing is void. Appellant presents no authority for his position and therefore has waived the issue. *Ashford v. State* (1984), Ind., 464 N.E.2d 1298; *Guardiola v. State* (1978), 268 Ind.

404, 375 N.E.2d 1105; Ind.R.App.P. 8.3(A)(7). However, we note that Appellant's position presents no error in any event. Failure to enter judgment prior to sentencing does not constitute error where the defendant is otherwise properly sentenced. *Schalkle v. State* (1979), 272 Ind. 134, 396 N.E.2d 384.

## VI

■ Prior to *voir dire* of the jury, the Appellant moved to strike the entire jury venire panel, claiming the jury venire panel was advised during jury orientation that one of the cases with which some of them might become involved was a capital case. He claimed this denied him his right to a fair and impartial jury because prospective jurors, given time to consider the nature of a case before *voir dire*, will find reasons or excuses for having themselves included in, or excluded from, the trial jury. It was the practice of the trial judge in the Harrison Circuit Court to have an orientation service with a new panel of prospective jurors, acquainting them with the court system, jury duties, and attorneys and parties involved, to make them more comfortable in their duties. The State contends that if jurors are notified in advance that they may face selection on a capital case, then on *voir dire* they may be better able to provide full and honest answers to questions concerning their ability to impartially try a capital case, having had an opportunity to more fully examine their true feelings on the subject. Since the purpose of *voir dire* is to determine if the potential juror can impartially try a case, the State contends that the procedure followed in this case tends to facilitate achieving that goal. We see no error or prejudice to Appellant by the orientation procedure used by the trial judge here. This procedure is similar to furnishing questionnaires or pamphlets, generally describing the jury duty, to prospective jurors. *Poindexter v. State* (1978), 268 Ind. 167, 374 N.E.2d 509; *Brown v. State* (1977), 266 Ind. 82, 360 N.E.2d 830. The jury panel was given no identification nor details of any case, including the instant one, during the orienta-

tion. They were told, in a general way, that some of them might become involved in a capital case. Defendant does not claim the venire panel was not a representative cross-section of the community or that there was any effort to limit or restrict the general makeup of the jury. Appellant's argument does not show there was a lack of a fair and impartial jury consisting of a fair cross-section of the community. There is no merit to his contention on this issue. *Mays v. State* (1984), Ind., 469 N.E.2d 1161.

## VII

■ During the trial the prosecution requested a *voir dire* of the jury seeking to determine whether any of the members of the jury had seen a particular television program broadcast the night before about the death penalty. The program discussed a case in Florida and examined certain aspects of the death penalty. The prosecution asked the court to determine whether any jurors might have been influenced by the program. Appellant claims that having the jury *voir dired* placed undue emphasis on the contents of the television program. The trial judge indicated to counsel for all parties that he would first ask the jurors which, if any, had seen the program and with whom these jurors had discussed its contents. Then the judge would send out of the jury room all jurors who had not seen the program and who had not heard anything about it. The judge indicated he then would examine each remaining juror alone to determine if the program had affected any of them. Appellant objected to this *voir dire* but his objection was overruled. He now claims the trial court committed reversible error by proceeding as above outlined.

Inquiry of the jury indicated that only one had actually seen the television program and he stated it would not affect his decision in the case at bar. Six other jurors had heard some mention of the news program in the jury room, but all maintained that nothing they heard would in any way affect their consideration of Appellant's case.

It appears the trial court did follow the proper procedure in attempting to determine if, in fact, any prejudice due to the news story had occurred. *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819. It was for the trial court to determine whether to conduct the *voir dire* and determine whether there appeared to be any resulting prejudice to either party. *Bruce v. State* (1978) 268 Ind. 180, 375 N.E.2d 1042, *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662. Appellant claims mere mention of the show would tend to prejudice his cause. However, the State correctly points out that the procedure used by the trial court did not expose the contents of the show to those who had not seen or heard about it. The trial judge further determined that the juror who had seen it and those who had heard something about it were not influenced by the show such as to prejudice any of the parties. Appellant cites no authority for his position that he was prejudiced nor does he demonstrate any prejudice. The jury was sequestered from this point on until the conclusion of the trial and returned a verdict of guilty but recommended a death penalty not be imposed. Appellant therefore presents no reversible error on this issue.

### VIII

The State was allowed to introduce into evidence over objection of Appellant numerous slide photographs depicting the general vicinity of the scene of the crime, both the inside and outside of the dwelling where the crime occurred, the victims of the crime with the injuries they received and the path traveled by the Appellant in approaching the victim's house. Appellant objected to the admission of these exhibits claiming they were irrelevant, immaterial and cumulative. Appellant makes the same objections here. He argues that the large number of exhibits admitted added little to the jury's understanding of the case while tending to impress the jury with the large volume of materials gathered in the investigation of the crime. Unfortunately, Appellant again cites us to no authority for his position and does not demonstrate any resulting prejudice. He states fewer exhibits of the scenes would have been sufficient. However, he does not indicate which ones were sufficient and which ones thereafter became repetitive and cumulative. He merely makes the general statement that there were too many. This, of course, makes it virtually impossible for us to review this issue. Photographs of a crime scene are generally admissible because they are competent and relevant aids by which the jury can orient itself to best understand the evidence presented to it. *Grimes v. State* (1983), Ind., 450 N.E.2d 512; *Stewart v. State* (1982), Ind., 442 N.E.2d 1026. Moreover, the fact that photographs are repetitious or cumulative of the crime scene does not necessarily render them inadmissible or prejudicial. They are admissible if they are competent and relevant aids to the jury in orienting themselves and understanding the evidence, unless there is a showing that the prejudicial value of the additional exhibits clearly outweighed their relevance and utility. *Lloyd v. State* (1983), Ind., 448 N.E.2d 1062, *reh. denied; Strange v. State* (1983), Ind., 452 N.E.2d 927, *reh. denied.* The exhibits here depicted the crime scene, showing the general area from different angles and distances, and the victims, showing where they were found and the wounds suffered by them. These were aids to the jury in visualizing the crime scene and understanding the testimony of other witnesses. The admission of photographs is within the sound discretion of the trial court and will not be disturbed except for abuse of discretion. *Paige v. State* (1982), Ind., 441 N.E.2d 438. Defendant presents nothing to us here indicating grounds for reversal in the admission of these exhibits. *Dresser v. State* (1983), Ind., 454 N.E.2d 406, *reh. denied.*

### IX

During the trial the prosecution became aware of two people not listed as witnesses who had been involved with State's Exhibits concerning blood samples and were therefore part of the chain of

custody of these exhibits. The State moved to add these two individuals to its witness list. The defendant objected to the addition of these witnesses, claiming surprise, and that the defense had not had the opportunity to interview these witnesses. Defendant concedes the State did supply a vast amount of discovery information and that these two witnesses were not known to the prosecutor until this point in the trial. It clearly appears the mistake was unintentional on the part of the prosecution. The court did grant a recess to the defendant to give counsel time to interview these witnesses. Following the recess the defense still objected on the basis of surprise. The trial court permitted the State to amend its witness list and call the witnesses. Defendant offered no additional objection to the testimony of the two witnesses.

The trial court is in the best position to determine what sanction, if any, is appropriate in a discovery situation such as this and his decision will not be overturned absent a showing of abuse of discretion that amounts to clear error. *Murray v. State* (1982), Ind., 442 N.E.2d 1012. The appropriate action in an instance such as this is for the defense to request a continuance to interview the witnesses and determine if additional discovery is required. *Jackson v. State* (1984), Ind., 462 N.E.2d 63; *Arnold v. State* (1984), Ind., 460 N.E.2d 494. That was done here and it appears the defense did not indicate a need for additional time. Exclusion of the evidence is required only where the failure to comply with the discovery order is grossly misleading or demonstrates bad faith on the part of the State. *Jackson, supra; Hovis v. State* (1983), Ind., 455 N.E.2d 577; *Murray, supra.* No abuse of discretion amounting to reversible error is presented.

## X

▮ The defense presented witness Michael Clark whose testimony was to the effect that Appellant had a good reputation as a worker. On cross-examination the prosecution was permitted over defense's objection to examine the witness regarding his knowledge of an incident in Gibson County, Indiana three years ago in which Appellant and Michael Dillon were fired for having allegedly stolen from their employer. Appellant claims this cross-examination should not have been permitted since at this point Appellant had not taken the stand and his reputation for truthfulness and his general reputation in the community were not at issue. The State contends the cross-examination was proper since the witness had opened the door on the subject of the appellant's good employment reputation and it therefore was proper to cross-examine him regarding specific acts of bad character relating to that subject. We agree. In *Robertson v. State* (1974), 262 Ind. 562, 319 N.E.2d 833, defendant Robertson called a psychologist who testified to the effect that the defendant was a passive person and type of person who would not likely commit the sort of act for which he was on trial. Justice Arterburn, speaking for a unanimous Court in *Jordan v. State* (1953), 232 Ind. 265, 110 N.E.2d 751, *reh. denied,* observed that under the guise of psychology Defendant had put in issue what the law calls his reputation for character and in particular the traits of belligerence and troublemaking which are the traits relevant to the crime charged. Having done so it was proper for the State to offer evidence of his bad character, including specific acts of prior misconduct. The same circumstance is presented here. Defense witness Clark was presented to give favorable testimony of Appellant's work performance as a reliable employee. This put into issue Appellant's general moral character and, in particular, his ability as a worker and the State was entitled to rebut the favorable impression Appellant had presented to the jury by cross-examining the witness with regard to particular unfavorable work performance. *See also Bond v. State* (1980), 273 Ind. 233, 403 N.E.2d 812, *reh. denied; Eguia v. State* (1984), Ind.App., 468 N.E.2d 559; *Parrish v. State* (1983), Ind.App., 453 N.E.2d 234. The scope of cross-examination is within the discretion of the trial judge and reversal is

merited only in showing an abuse of that discretion. *Robertson, supra; Pinkston v. State* (1972), 258 Ind. 672, 284 N.E.2d 767. No such abuse is shown here.

## XI

◼ Defendant argues on appeal that because there had been a stipulation that statements he made during a polygraph examination would not be used in any trial, it was error for the trial court to permit any reference to the statements made during the polygraph which were inconsistent with his trial testimony. No mention of the polygraph examination was made at trial but the State was permitted to cross-examine the defendant as to his statements made at that time which were inconsistent with his trial testimony on material issues.

The stipulations were made prior to trial when plea negotiations were being contemplated by both sides and the State, before making any firm offer, wanted as one of its conditions for plea negotiations a truthful statement from Defendant as to what happened at the Hilborn residence. The State contends that the prosecution agreed to the stipulation with the condition that the defendant would tell the truth. Subsequent to this stipulation, the defendant filed an alibi notice to the State which made it apparent that Defendant was not telling the truth at the time he made his statements for the polygraph examination. When questioned at trial, Defendant admitted that he had lied in his statements on July 13, 1981, when the polygraph examination was made. It is the State's contention that when Defendant got on the stand and made materially inconsistent statements that the State was relieved from complying with the stipulation because it had been fraudulently made. The trial court agreed and permitted the cross-examination. We agree that Defendant cannot now claim unfairness when he purposely contrived statements to induce the State to enter into a stipulation. No mention was made of the polygraph examination and Defendant was merely asked if he had made a statement on July 13, 1981 which was materially in-

consistent with his trial testimony. Defendant responded he did make such a statement but he was not telling the truth at the time. It was proper on cross-examination to rebut Defendant's direct testimony with his prior inconsistent statements from the polygraph examination for the jury was not informed that the prior statements were made during the polygraph examination or were in any way related to it. *Lambert v. State* (1983), Ind., 448 N.E.2d 288; *Pounds v. State* (1983), Ind., 443 N.E.2d 1193. Under the circumstances presented here the trial court did not act improperly in permitting the prosecution to question the defendant on the previous statements made by him that were inconsistent with his trial testimony.

## XII

At trial Defendant moved the trial court to order witness Richard Dillon to submit to a psychiatric examination in order to determine if Dillon knew what the truth was or if he was a psychopathic liar. Defendant's motion was overruled. Defendant makes no argument on this issue nor does he cite us to any authority to support his claim. He merely makes the statement that it was error for the court to rule as it did. We therefore consider this issue waived by the defendant and will consider it no further. Ind.R.App.P. 8.3(A)(7); *Ashford v. State* (1984), Ind., 464 N.E.2d 1298; *Guardiola, supra.*

## XIII

◼ Defendant claims the trial court erred in refusing to instruct the jury with Defendant's tendered verdict forms on lesser included offenses. It first appears Defendant has waived this error since the verdict forms were submitted without being numbered and without the signature of either Defendant or his counsel. *Harding v. State* (1984), Ind., 457 N.E.2d 1098; Ind. Code § 35–37–2–2 (Burns Supp.1984).

Furthermore, Defendant did not submit any instructions defining the alleged lesser included offenses. Therefore, the jury would be called upon to determine whether

Defendant had committed the lesser included offense of burglary or criminal trespass without any explanation or understanding of the elements of these crimes. The trial court refused the tendered instructions and gave his own instructions. More significantly, there is no showing that lesser included offense instructions would properly be given in view of the evidence. Throughout the trial Defendant maintained his innocence of any wrongdoing concerning the Hilborn murders and claimed he was not present at the time of the crimes. The State's evidence overwhelmingly demonstrated Defendant's guilt of the crimes as charged. Thus, there was no evidence to support a lesser included offense instruction or verdict form and the trial court did not err in refusing to give the tendered verdict forms. *See Holland v. State* (1983), Ind., 444 N.E.2d 1190. Defendant claims the United States Supreme Court holding in *Beck v. Alabama* (1980), 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392, mandates lesser included offense instructions in all capital cases. This is a misreading of *Beck*. *Beck* requires the giving of lesser included offense instructions in capital cases only where there is evidence to support such instructions. There is no such evidence here. *See also Spaziano, supra.*

### XIV

With his motion to correct error Defendant filed an affidavit by Richard Dillon in which Dillon recanted his trial testimony and his pre-trial statements to the police that implicated this Defendant. Since Dillon's testimony was the primary direct evidence implicating Defendant in these crimes, it is Defendant's position that this was newly discovered evidence that entitled him to a new trial. The standard for reviewing a motion for a new trial based on newly discovered evidence was set out in *Emerson v. State* (1972), 259 Ind. 399, 287 N.E.2d 867, 871, as follows:

An application for a new trial, made on the ground of newly discovered evidence, must be supported by affidavit and such affidavit or affidavits must contain a statement of the facts showing (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result. *Cansler v. State,* (1972) [258] Ind. [450], 281 N.E.2d 881; *Tungate v. State,* (1958) 238 Ind. 48, 147 N.E.2d 232. In deciding whether a piece of evidence would produce a different result the presiding judge may properly consider the weight which a reasonable trier of fact would give it, and while so doing, may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case.

Defendant's motion to correct error merely presents an affidavit indicating Dillon completely changed his testimony, but it does not state when the evidence was discovered, if due diligence was used to discover it in time for trial, or whether it probably would produce a different result upon retrial. Although Dillon's testimony at trial and his pre-trial statements to the police implicated Defendant to a large extent, other testimony regarding facts and circumstances strongly corroborated this testimony. We agree with the State's analysis that Dillon's affidavit is, at best, merely impeaching and that it is unlikely a different result would be reached upon a retrial. In motions such as this we will reverse the judgment of the trial court only if we find it has abused its discretion in determining whether a different result would have been possible upon retrial. In cases of very similar circumstances we have found that the trial courts did not abuse their discretion in determining a different result was not probable upon retrial. *Smith v. State* (1983), Ind., 455 N.E.2d 346; *Harden v. State* (1982), Ind., 441 N.E.2d 215, *cert. denied,* 459 U.S. 1149, 103 S.Ct. 794, 74

L.Ed.2d 998. In view of the circumstances here, the trial judge was justified in finding Dillon's affidavit was merely impeaching, not worthy of belief and had little likelihood of producing a different result upon a new trial. We therefore find no abuse of discretion in the trial court's denial of the application for a new trial based upon newly discovered evidence.

### XV

 Finally, Appellant raises three additional claims of error which he presents in the following fashion:

"ISSUE 16, 17 & 19

ISSUE 16 THE TRIAL COURT ERRED IN OVERRULING CERTAIN OBJECTIONS OF THE DEFENDANT.

ISSUE 17 THE TRIAL COURT ERRED IN DENYING CERTAIN MOTIONS OF THE DEFENDANT.

ISSUE 19 THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO CORRECT ERRORS FOR THE REASON THAT THE CUMULATIVE EFFECT OF THE TOTAL ERRORS MADE BY THE TRIAL COURT DURING THE TRIAL OF THIS CAUSE WAS PREJUDICIAL.

Throughout this Brief, the Defendant has pointed out numerous errors which it believes were made by the Trial Court. In addition to those errors specifically identified by the Defendant, there may well be other errors discovered by this Court during the course of its statutorily required duty to review the death sentence in a capital case. While any one (1) error complained of herein, except for the Sequestration issue may be deemed to be harmless, the cummulative (sic) effect of all of the errors enumerated herein operate to be substantially prejudicial, and consequently the Defendant has been denied his constitutionally guaranteed fair and impartial trial, and the conviction must be reversed.

We further note that at the beginning of the Appellant's Brief counsel makes the following observations:

The issue presented for review by this Court, pursuant to statute, is whether or not the court erred in imposing the sentence of death upon the Defendant. In this connection, the court is required to review all issues that may touch upon the propriety of the imposition of death penalty, including issues pertaining to the conviction of the Defendant. The court has an affirmative duty to review the entire Transcript for any error, and not just that error identified, and argued by the Appellant. With that in mind, the Appellant states the issues for review as follows.

At another point counsel makes the following statement in the Brief:

In order to assist the court in performing its statutory duty, the Appellant would list the following errors believed by the appellant to have been committed by the Trial Court. To the extent that there may be reversible error not itemized herein by the Appellant, the Appellant expressly does not waive the presentation of such error, and relies upon the Court's duty to search the record for any such error.

It is apparent counsel totally misunderstands the duties imposed on this Court pursuant to Ind.Code § 35–50–2–9(h) providing for automatic review of death sentences and his corresponding responsibility as appellate counsel. In *Lowery*, Ind., 434 N.E.2d at 871, (Givan, C.J., and Pivarnik, J., dissenting on other grounds), Justice DeBruler expressed for the Court:

There is another question presented by this appeal which needs to be directly addressed, and it involves the extent of the obligation of appellate counsel representing a defendant who has received the sentence of death to marshal arguments against the application of the death sentence. Appellant's counsel takes the position that this Court's mandatory review of death sentences is conducted outside the adversarial process, relying upon our opinion in *Judy v. State*, (1981), Ind., 416 N.E.2d 95, and has concluded that he has minimal obligation to participate in the

process on behalf of his client. In the *Judy* case, the defendant appeared personally before this Court and voluntarily and knowingly waived all right to appeal from his convictions, and instructed his lawyers to take no action in any regard on his behalf in the appeal and notified the court that he personally would take no action on his own behalf in the appeal. There was a waiver of the right to counsel. The court responded by shouldering the burden normally to be assumed by the appellant. In the present case appellant Lowery has given no waiver of appeal and no waiver of counsel. He therefore, unlike the defendant in the *Judy* case, is entitled to the fullest assistance of counsel at every critical stage of this appeal, including that stage at which we review the death sentence under our mandatory obligation to do so. Appellate counsel in capital cases must present arguable legal points on behalf of his client facilitative of our review of the death sentence.

We again remind counsel here that this Court's duty to automatically review the imposition of a death sentence does not remove the responsibility of counsel to fully brief and present all issues, whether they are trial issues or those involving the propriety of the imposition of the death penalty. Counsel misinterprets his responsibilities by suggesting he can delegate them to this Court, requiring us to search the entire record page by page to seek out error if any there be. By statute it is the responsibility of this Court to review the death sentence. Ind.Code § 35-50-2-9(h). However, this Court is not required to review the record for possible trial errors and such errors may be waived as in any other appeal if not raised. *Judy v. State* (1981), 275 Ind. 145, 416 N.E.2d 95, 102. With respect to trial evidentiary issues, review of a death penalty case is no different from the review of any other criminal appeal: in order to preserve error for appellate review Defendant must make proper trial objections. *Bowens v. State* (1985), Ind., 481 N.E.2d 1289; *Tabor v. State* (1984), Ind., 461 N.E.2d 118. Defendant must raise the alleged error specifically in the motion to correct error and set forth therein the complained of questions and objections; and he must make cogent arguments in his brief on the specific allegations of error. Ind.R. App.P. 8.3(A)(7); *Ashford v. State* (1984), Ind., 464 N.E.2d 1298; *Survance v. State* (1984), Ind., 465 N.E.2d 1076. A general statement by Defendant in his brief that there may be improper rulings by the trial court regarding objections made by Defendant or there may be a cumulative effect of errors, presents no issue on appeal requiring a response by this Court.

## XVI

Because of our determination in Issue IV, finding technical deficiencies in the procedure followed by the court in imposing the death sentence, we need not make further separate review to ascertain whether the process imposing the death penalty upon this defendant was arbitrary, discriminatory, or capricious.

Having reviewed all allegations of error raised by this defendant, we find no error requiring reversal of his convictions. However, because of the procedural deficiencies found in the imposition of the death sentence by the trial judge, we now vacate the death sentence and remand this case to the trial court to make a new final determination of sentence following jury recommendation, in accordance with IC 35-50-2-9(e):

> If the hearing is by jury, the jury shall recommend to the court whether the death penalty should be imposed. * * * The court shall make the final determination of the sentence, after considering the jury's recommendation, and the sentence shall be based on the same standards that the jury was required to consider. The court is not bound by the jury's recommendation.

For the purposes of this redetermination, the trial court shall commence from the jury's recommendation against the death sentence, and complete the final determination of sentence as required by law.

We further take judicial notice of the fact that the presiding trial court judge

herein, Honorable Scott T. Miller, has since assumed the office of Prosecuting Attorney for the 77th Judicial District. Finding further that the nature of the duties and responsibilities required in the performance of the prosecutorial function could potentially give rise to bias or prejudice or otherwise diminish the capacity of said judge to make a proper redetermination of death penalty herein, we now remand this case for final determination of sentence by Honorable S. Morris Wilson, Judge, Harrison Circuit Court.

DeBRULER and SHEPARD, JJ., concur.

PIVARNIK, J., concurs and dissents with opinion in which GIVAN, C.J., concurs.

PIVARNIK, Justice, concurring and dissenting.

I concur with the majority wherein it affirms the convictions of the defendant for both of these murders. However, I dissent to the judgment of the majority in setting aside the death penalty sentence by the trial court. As a matter of fact, I am at a total loss in attempting to discern on what grounds the majority finds that the death sentence should be set aside. Their findings in this regard are not supported by the decisions of the United States Supreme Court or the many decisions on this subject by this Court. To the contrary, the decisions of the United States Supreme Court and this Court clearly support the findings and judgment of the trial court.

The trial court's reasons for imposing the death sentence are overwhelmingly supported by the evidence. The trial court made detailed findings proving without any doubt Defendant committed both murders intentionally and in perpetration of a robbery and burglary. The trial court found this to be true beyond a reasonable doubt.

As the majority points out, it is well established that the trial court need not accept the recommendation of the jury and may impose the death sentence regardless of the jury's recommendation. The United States Supreme Court so provided in *Spazi-*

*ano v. Florida* (1984) 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340, and this Court held so in *Schiro v. State,* (1983), Ind., 451 N.E.2d 1047, *cert. denied,* 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699. The reasoning in these cases was that the jury decision on a death sentence is merely a recommendation and the trial court may impose the death sentence even if the jury recommends against it. Ind.Code § 35–50–2–9(e) expressly provides that the trial court is to set the sentence and is not bound by the jury's recommendation. Furthermore, it has been held permissible for the State to charge but one aggravating circumstance at the time of filing the charging instrument but then to prove additional aggravating circumstances during the sentencing hearing. *Zant v. Stephens* (1983), 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235; *Davis v. State* (1985), Ind., 477 N.E.2d 889, *cert. denied,* —— U.S. ——, 106 S.Ct. 546, 88 L.Ed.2d 475. In *Davis,* the State charged that two murders were committed by defendant Davis while committing child molesting and while by lying in wait. The State did not charge the aggravating circumstance of having committed another murder. During the sentencing stage, the trial court specifically found that an additional aggravating circumstance of having committed another murder was proved by the State and recounted this factor in reaching its judgment of imposing the death penalty. Furthermore, this Court found that the evidence did not support the aggravating circumstance of lying in wait. Nonetheless, we held in *Davis* that even though the trial court had used the aggravating circumstance, of lying in wait, that was not supported by the evidence, the death penalty imposition was still supported and properly entered. We based our holding on the fact the court found at least one aggravating circumstance which in fact was clearly supported by the evidence and which existed beyond a reasonable doubt: namely, that the murder was committed in the perpetration of child molesting. This Court further found the trial court properly used the additional aggravating circumstance of a multiple killing

even though this had not been charged by the State. We found in *Davis*, Ind., 477 N.E.2d at 893:

"We find no error in the Court's finding of the additional circumstance in this case since defendant did have specific notice of the two aggravating circumstances the State had alleged and the state's burden to prove beyond a reasonable doubt the existence of these two aggravating circumstances did not change. During the sentencing phase of the proceeding, the trial court was properly to consider the specific circumstances of the instant offenses and the nature of the defendant. The court had before it defendant's guilty pleas to the commission of the two murders and the two attempted murders. Therefore, it could properly consider the conviction of the first murder count as an aggravating circumstance in deciding to recommend the death penalty on the other murder count. *See Judy v. State* (1981), 275 Ind. 145, 416 N.E.2d 95.

Defendant did have notice of the specific reasons for the filing of the death penalty information and obviously was aware that the court would consider all the facts surrounding the crimes during the sentencing hearing. There was no error in the court's finding of the additional aggravating circumstance of the commission of another murder under the circumstances of this case."

The majority fails to give any reasons for rejecting the trial court's imposition of the death penalty in view of the fact that it was based on the aggravating circumstance of commission of murder in the perpetration of burglary and robbery. Rather, it goes into a lengthy discussion on the specific meanings of Ind.Code § 35–50–2–9(7) and (8). The problem, according to the majority, is the trial court used the language "convicted" as stated in (7) rather than "had committed" as recited in (8). In view of the court's findings here, this is only a question of semantics and has no effect whatever on the findings of the trial court to support its judgment. In *State v. McCormick* (1979), 272 Ind. 272, 397

N.E.2d 276, this Court held that (8) was unconstitutionally applied when it referred to a prior murder that had not been reduced to a conviction. In view of that, there is very little use for (8) and very little difference between (8) and (7). It has clearly been established, that an aggravating circumstance is properly applied when multiple murders are committed by the defendant. *Wallace v. State* (1985), Ind., 486 N.E.2d 445; *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, *cert. denied,* —— U.S. ——, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986); *Davis, supra; Judy, supra.*

I fully agree with the majority that when reviewing a death sentence we follow meticulous procedural obedience, however, I cannot discern a problem in this area. The evidence clearly and unquestionably supports the trial court's findings that the defendant here did purposely and intentionally murder the two elderly people here in their own home while in the perpetration of a burglary and a robbery. It is further our duty as the judiciary to recognize and apply the law as we find it. It is within the province of the Legislature and not this Court to fix the terms of punishment for crimes. This includes fixing the death penalty for murder when circumstances such as those found in this case exist. The executive branch of government, through the office of the Governor, has the authority to commute sentences or give pardons. This Court does not. This defendant was properly found to have committed these crimes and was sentenced by the trial judge to suffer the death penalty. I would affirm that judgment.

GIVAN, C.J., concurs.